287 P.2d 989

Rufelio V. ARCHULETA, Administrator of the Estate of Theodoro Archuleta, Deceased, Plaintiff-Appellant,

v.

Santiago VELASQUEZ and Juanita Velasquez, his wife, Defendants-Appellees.

No. 5919.

Supreme Court of New Mexico.

Sept. 15, 1955.

Johnston Jeffries, Aztec, Herman A. Daugherty, Farmington, for appellant.

G. W. R. Hoy, Oscar L. Donisthorpe, Farmington, for appellees.

COMPTON, Chief Justice.

This is an appeal from a judgment denying relief on the ground of mistake. On April 9, 1951, appellant's intestate, Theodoro Archuleta, and appellee Santiago Velasquez, entered into a contract whereby Archuleta agreed to convey to Velasquez the surface rights only to approximately 127 acres of land in San Juan County. Section 13 of the contract reads:

"13. It is understood and agreed that, coincident herewith the Owner has executed a good and sufficient warranty deed conveying the above described premises to the Purchaser, which said deed, together with a copy hereof, shall be placed in escrow, with Citizens Bank of Aztec, N. M. who is hereby designated and appointed Escrow Agent, to be delivered by the Escrow Agent to the Purchaser upon full compliance on his part with all the conditions of this contract. In consideration of that fact the said Purchaser executes, coincident herewith, a special warranty deed reconveying the above described premises to the Owner, which said special warranty deed shall also be placed in escrow herewith to be delivered by the Escrow Agent to the Owner in the event that the said Purchaser defaults as hereinabove set forth, and remains in default for a period of 30 days without the written consent of the Owner for said Purchase so to remain in default."

At the same time the parties also jointly directed a letter to the bank, the letter being prepared by Archuleta's attorney, stating that the following papers were to be placed in escrow; "copy of escrow agreement and contract, warranty deed."

Subsequently, on June 30, 1951, Archuleta and both appellees entered into a supplemental agreement which reaffirmed the original contract for the sale of the surface rights only, but which included certain farm machinery and equipment inadvertently omitted from the original contract. Thereafter, on November 16, 1951, the contracting parties met in the office of Archuleta's attorney, at which time Archuleta executed and delivered to appellees a warranty deed to the land involved which con-

veyed both the surface and an undivided one-half mineral interest therein.

Archuleta instituted this proceeding to cancel the deed in so far as it conveys the mineral interest, or, in the alternative, to reform it so as to exclude such mineral interest. The complaint alleges that due to mistake of the scrivener and by the mutual mistake of the parties thereto, the deed was so drawn as to convey both the surface and one-half mineral interest, contrary to the intention of the parties. In a second count, it alleges that the failure to reserve the mineral interest was a unilateral mistake of the grantor, known to or suspected by the grantees.

The answer admits the execution of the original and supplemental agreements but denies the alleged mistake. As an affirmative defense, appellees allege that there was a failure to perform by Archuleta and the contracts were expressly rescinded by a subsequent parol agreement, whereby Archuleta agreed to and did convey both the surface and mineral interest in the land. At a trial before the court without a jury, the issues were found in favor of appellees. Judgment was entered accordingly, from which the appeal is taken.

The substance of the court's findings, material to a decision, is cited thusly: that Archuleta breached the original and supplemental agreements by failing to place the warranty deed in escrow and by conveying to appellees certain farm machinery to which he had no title; that Santiago Velasquez, learning of the breach, notified Archuleta that he had elected to exercise his right to declare, and did declare, a forfeiture of the contract; that thereupon Archuleta offered to convey both the surface and mineral interest if appellees would complete the deal; that appellees accepted the offer and the warranty deed was made and delivered pursuant to such oral agreement; and that the conveyance of the mineral interest was not the result of mistake.

The sufficiency of the evidence to support the findings is challenged. While the evidence of rescission of a written contract by a subsequent parol agreement must be clear, positive and above suspicion, we think the findings are supported by that type of evidence. Compare our recent case of Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299, dealing with the quantum of evidence required where fraud is charged.

The evidence is clear and convincing. In September, 1951, Velasquez learned that Archuleta had not placed the deed in escrow as required of him by the contract. He also learned that Archuleta did not own all the farm machinery and equipment purportedly conveyed by the secondary contract. When he talked to Archuleta, Archuleta admitted that he had not put the deed in escrow and that he did not own all the machinery; whereupon, Velasquez declared a

forfeiture of the contract. The evidence is equally convincing that Archuleta was anxious for the deal to go through and as an inducement therefor, offered Velasquez his one-half mineral interest in the land, which offer was accepted by Velasquez. He had other deals pending which could not be closed unless he first closed the deal with Velasquez. That Archuleta was hard pressed financially at the time is not questioned.

There is much to corroborate the testimony of Velasquez. The deed was prepared by Archuleta's attorney. Archuleta only owned one-half of the minerals and following the description in the deed, there was inserted therein a clause specifically excluding therefrom the one-half mineral interest not owned by him. Velasquez' attorney was present when Archuleta delivered the deed to appellees and it was examined by their attorney to see whether it conveyed the mineral interest. Actually, the deed was passed around between the grantor, grantees and their respective attorneys for examination, after which Archuleta's attorney cancelled the documentary stamps and suggested to Velasquez that it should be recorded, which was done some three days later. We deem the evidence substantial when tested by the foregoing rule and adequately supports the finding that the conveyance was free from mistake.

It is argued that the court erred in refusing to make certain requested findings. Where findings are properly supported by substantial evidence, error is not to be found in the refusal of the court to make findings to the contrary. The substantial evidence rule has been so frequently announced that citation of authority should not be required. When a judgment is attacked as being unsupported, the powers of the appellate court ends with a determination whether there is substantial evidence to support it, contradicted or uncontradicted. And in reviewing the evidence on appeal, all conflicts must be resolved in favor of the successful party and all reasonable inferences indulged in to support the judgment; evidence and inference to the contrary will be disregarded. State ex rel. Magee v. Williams, 57 N.M. 588, 261 P.2d 131; Little v. Johnson, 56 N.M. 232, 242 P.2d 1000.

Having so concluded, the deed alone must be looked to in order to determine the right and equity of the parties. Collier v. Sage, 51 N.M. 147, 180 P.2d 242; Everett v. Gilliland, 47 N.M. 269, 141 P.2d 326; Fuqua v. Trego, 47 N.M. 34, 133 P.2d 344; Norment v. Turley, 24 N.M. 526, 174 P. 999.

The judgment will be affirmed and It Is So Ordered.

LUJAN, SADLER, McGHEE and KIKER, JJ., concur.