755 P.2d 64

**CITIZENS STATE BANK OF ANTON, TEXAS, Plaintiff–Appellee,**

v.

**Bradford Ace CHRISTMAS, Defendant–Appellant.**

**No. 17365.**

Supreme Court of New Mexico.

May 31, 1988.

Kastler and Kamm, Paul A. Kastler, Nicholas Cullander, Raton, for defendant-appellant.

Gary D. Alsup, Clayton, for plaintiff-appellee.

OPINION

STOWERS, Justice.

Defendant-appellant Christmas appeals from the judgment of the district court awarding him $5,658 in damages based on an agistor's lien on certain cattle for their consumption of grass on his land. We affirm.

The material facts are not in dispute. On March 22, 1986, Christmas entered into a grazing agreement with Shane Hasha to graze cattle on defendant's land. The agreement specified a minimum delivery of 2,200 head of cattle no later than May 10, 1986, and a payment of $.30 per pound for

each pound of gain by the animals during the grazing season. It also provided for a 1.75 pounds, times $.30, per day penalty for any late delivery or nondelivery of cattle, and this penalty was applicable for each day from May 10 through October 1, 1986. Moreover, defendant would have an agistor's lien "as allowed by law upon the cattle, in priority to all other liens, until the full payment is made by * * * [Hasha] of the rentals * * * *" On June 20, 1986, Hasha delivered approximately 205 head of cattle. Thereafter, when Hasha failed to deliver the contracted amount of 2,200 head of cattle, defendant, on August 8, 1986, filed the grazing agreement as an agistor's lien in the Harding County Miscellaneous Records. Meanwhile, Hasha had borrowed $67,000 from plaintiff-appellee Citizens State Bank of Anton, Texas (Bank) as evidenced by two notes dated June 26 and July 28, 1986. To secure each note, Hasha gave the Bank a security interest in his cattle which the Bank perfected by filing in the Harding County Clerk's Office on October 16, 1986. Out of the 205 head of cattle delivered by Hasha to defendant, 193 survived, which were sold at auction on November 15, 1986. The proceeds from the sale were deposited in the court's registry. Both the Bank and defendant claim liens on the same cattle.

The Bank filed a lawsuit against Hasha and defendant to enjoin defendant from receiving the proceeds from the sale of the cattle, to determine Hasha's debt and to determine lien priorities between itself and defendant. Hasha defaulted on the Bank's claims and the Bank received a judgment against him. At trial the Bank claimed that defendant's security interest in the cattle, based on the agistor's lien statute, extended to the amount of feed provided to those cattle sold at the auction. Since defendant's lien was filed before the Bank's security interest was perfected, defendant had priority in the proceeds from the auction. Defendant claimed, however, that his lien covered not only the feed provided to the cattle that were sold, but also the feed that would have been provided to those cattle contracted for that were either late delivered or not delivered at all. In other words, defendant's damages should include the 1.75 pound per day penalty for the number of cattle Hasha failed to deliver out of the 2,200 contracted for in the agreement as a part of the minimum rentals due. At the conclusion of the bench trial, the court ruled that Hasha had breached the grazing agreement and entered judgment in favor of defendant for $130,287.80, and held that defendant's agistor's lien did not secure payment of all rentals due under the agreement. The court limited defendant's agistor's lien to the actual weight gain of the cattle; in other words, for the amount of grass the reduced number of cattle consumed, which totaled $5,658. The court reasoned that the lien did not extend to the penalty set out in the agreement between defendant and Hasha for late delivery or nondelivery of the cattle. Thus, the lien entitled defendant only to $5,658 from the proceeds on deposit in the court registry. Defendant appeals and we affirm.

The issue is whether NMSA 1978, Section 48–3–7 (Repl.Pamp.1987), grants a lien to an agistor on livestock bailed to him, not only for the amount of feed and care provided for the cattle in his possession, but also for damages sustained by the lessor, due to the breach of contract by the lessee.

■ An agistor is a person who contracts with the owner of livestock to feed and care for the animals in return for compensation. NMSA 1978, § 48–3–7(E) (Repl. Pamp.1987). In New Mexico, an agistor's lien arises by operation of law pursuant to statute. Section 48–3–7 provides in relevant part:

A. [L]essors and agistors * * * who * * * furnish feed, * * * or pasture for the property and stock of others shall have a lien on the property and stock of such * * * lessees * * * to whom feed or shelter has been furnished until the same is paid, and shall have the right to take and retain possession of such property and stock until the indebtedness is paid.

Thus, in the event the owner of the cattle fails to pay for sums due under a contractual agreement, the agistor is entitled to encumber the cattle with an agistor's lien to secure payment.

Defendant argues that the district court altered the terms of the grazing agreement by construing the rentals due provision for late and deficient delivery of cattle as an unenforceable penalty. Defendant maintains that the method of calculating the rentals due should be based on the following weight gain formula: For those cattle timely delivered, the calcuation of rentals is the net weight gain of the cattle times $.30 per pound. For those cattle not delivered or late delivered, the rentals due is calculated by multiplying the number of missing cows, times 1.75 pounds weight gain the cattle would have gained if delivered on time, times the number of days the cattle were missing. Therefore, full payment of the rentals due in the agreement means the sum of the actual weight gain of cattle timely delivered plus rentals due for no delivery and late delivery.

■ The court found that the cattle did not gain weight anywhere near the amount contemplated in the contract; and, therefore, the amount of rentals due, as calculated by defendant, was unenforceable. Moreover, the New Mexico agistor's lien statute, Section 48–3–7, does not grant a lien on livestock for the breach of a provision in the grazing contract for late or nondelivery of cattle. Instead, the statute fixes a lien in favor of agistors and lessors for the feed, care, maintenance and pasturage furnished until the indebtedness for these has been paid by the owner of the cattle. *See also Williams v. De Baca*, 113 S.W.2d 566 (Tex.Civ.App.1938). The statute does not create a lien in defendant's behalf for pasturage to be furnished to cattle not delivered. Nor does the lien extend to damages for the breach of the contract to furnish the same.

In *Williams*, a similar case, the Texas Court of Civil Appeals set out an analogy to illustrate its decision as follows:

> For example, A places his horse with be in his livery stable under a contract for three months at 50 cents per day. A takes the horse out to B's stable after thirty days. He pays B for the thirty days B has kept his horse. B sues A for the remaining sixty days of the contract. Certainly it could not be said that B had a lien on A's horse to secure the payment of the sixty days under said contract when his horse was not in the stable and being cared for by B.

*Williams*, 113 S.W.2d at 570–71. Thus, the court concluded therein that the lien did not extend to future rentals or damages arising out of the breach of the contract. *Id.* at 571.

We hold that the amount of the agistor's lien on cattle stocked with defendant does not extend to damages for breach of the grazing contract for the shortage of cattle delivered to the pasture. The lien extends only to the feed, maintenance and care actually provided to those cattle delivered. We further note that defendant has already availed himself of his remedy against Hasha for breach of contract.

■ As to defendant's second point, he has failed to preserve this issue for appeal. Defendant did not submit requested findings of fact or conclusions of law on whether the parties intended the grazing agreement to be a security agreement under the Uniform Commercial Code (UCC) or whether it met the requisites of a formal security agreement under the UCC. Defendant's argument that the grazing agreement constituted a consensual security agreement, as contemplated by the UCC, is being raised for the first time on appeal. SCRA 1986, 1–052(B)(1)(f) provides that, "[a] party will waive specific findings of fact and conclusions of law if he fails to make a general request thereof in writing, or if he fails to tender specific findings and conclusions." There can be no review of the evidence on appeal when the party seeking review has failed to submit requested findings of fact and conclusions of law to the trial court. *Smith v. Maldonado*, 103 N.M. 570, 572, 711 P.2d 15, 17 (1985).

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.