773 P.2d 346

**SUPERIOR CONCRETE PUMPING, INC., a New Mexico corporation, Plaintiff–Appellee,**

v.

**DAVID MONTOYA CONSTRUCTION, INC. Defendant–Appellant.**

No. 17995.

Supreme Court of New Mexico.

May 1, 1989.

Rehearing Denied May 23, 1989.

402

Davis & Turpen, Stephen E. McIlwain, Albuquerque, for defendant-appellant.

William Lock, Albuquerque, for plaintiff-appellee.

OPINION

RANSOM, Justice.

This is an appeal from a judgment entered on an open account in favor of the plaintiff, Superior Concrete Pumping, Inc. (Superior). The defendant, David Montoya Construction, Inc. (Montoya), contends that the trial court erred in finding an open account, in awarding attorney fees, in calculating the rate of interest on the open account, and in finding a valid modification of the contract that was the subject of this dispute. We affirm.

Superior is a concrete pumper service that pumped concrete for Montoya, a concrete contractor. The parties had maintained a business relationship for approximately four years. In October 1985, Superior and Montoya entered into an oral agreement for Superior to pump concrete for Montoya on the "Blount" job, for which Superior would be paid $5.00 per cubic yard of concrete pumped.

In late January 1986, the owner of Superior, Ronald Vaughn, met with Montoya to discuss problems that Superior was encountering with the Blount job. Superior's cubic yard price had been based on Montoya's guarantee of minimum pours of approximately 200 yards per pour on certain basement slabs. This guaranteed volume was necessary to cover Superior's set-up and labor costs of each pour. The first two pours, however, averaged only slightly more than 100 yards, and Vaughn informed Montoya that the situation was not working. According to Vaughn, he and Monto-

ya modified the agreement to provide for an hourly rate. Superior would continue to bill at $5.00 per cubic yard for the balance of the job, but, at its completion when Montoya could recover back charges from the general contractor, Montoya would reimburse Superior the difference between the cubic yard price and the hourly rate. Although a specific hourly rate was not established at the time of the modification, Vaughn claimed that it was understood to be $75.00 per hour plus $1.50 per cubic yard. To support this claim, Vaughn testified that Superior billed at this rate on the same job when the general contractor used its service separately. In addition, Superior submitted a document that represented Vaughn's recordation of the individual pours, which detailed the pour's cost at $5.00 per cubic yard, at $65.00 per hour, and at $75.00 per hour. Vaughn testified that he kept this record throughout the Blount job and that he kept Montoya's estimator abreast of these cost amounts.

The trial court found that Montoya purchased the services of Superior on open account over a lengthy period of time. It found further that Superior and Montoya verbally agreed to modify the original Blount contract to reflect an hourly charge, that Superior would not have completed the Blount job without the modification in the contract, that Superior continued to work on the job based on said modification, and Montoya was estopped to assert that the agreement was not so modified. The trial court also found that Superior clearly disclosed to Montoya that unpaid invoices would incur late charges of two percent per month on the open account.

■ *Open Account.* Montoya's first two points rest upon whether the trial court erred in finding the existence of an open account. Relying upon *Heron v. Gaylor*, 46 N.M. 230, 126 P.2d 295 (1942), this Court in *Gentry v. Gentry*, 59 N.M. 395, 285 P.2d 503 (1955), defined an open account as follows:

[A]n account usually and properly kept in writing, wherein are set down by express

or implied agreement of the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original, express, or implied intention, there is to be but one single and indivisible liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one party or the other, as the balance shall indicate at the time of settlement or following the last pertinent entry of the account.

*Id.* at 398, 285 P.2d at 505–06.

Superior introduced into evidence ledger sheets that evinced the existence of an open account with Montoya as defined by the *Gentry* court. The ledger established that Montoya's account consisted of "a connected series of debit and credit entries of reciprocal charges and allowances." *See id.* Furthermore, Montoya's bookkeeper acknowledged that Montoya had engaged the services of Superior for several jobs occuring simultaneously with the Blount job and that it did not earmark specific payments for specific jobs charged to its account.

Without addressing the substantial evidence to support a finding of an open account, Montoya argues that each transaction between the parties that transpired over the course of their business relationship should be viewed as separate and distinct and should be treated independently as opposed to a continued series of related transactions. *See id.* Relying on *Southern Union Exploration Co. v. Wynn Exploration Co.*, 95 N.M. 594, 624 P.2d 536 (Ct.App.), *cert. denied*, 95 N.M. 593, 624 P.2d 535 (1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 461 (1982), Montoya maintains that this was not an open account because the Blount job was a single transaction whose terms were defined by contract and it could not be settled or closed at the convenience of the parties. The fact that the contractual agreement regarding the Blount job could not be closed at the convenience of either party had no bearing on either the right of Montoya or Superior to settle and close the existing open account. Furthermore, rather than tracking very closely the facts of *Southern Union* as alleged by Montoya, these facts are similar to *Wolf & Klar Cos. v. Garner*, 101 N.M. 116, 679 P.2d 258 (1984), in which this Court affirmed the finding of an open account when a ledger sheet disclosed a series of debit and credit entries made over the course of dealing between the parties.

We affirm the trial court's finding of an open account. Additionally, as Montoya only claims that the attorney fees awarded were unauthorized because the account in question was not an open account, *see* NMSA 1978, § 36–2–39 (Repl.Pamp.1984), we also affirm the trial court's award of attorney fees authorized by the statute. *See Wolf & Klar Cos.*, 101 N.M. at 117–18, 679 P.2d at 259–60.

■ *Interest rate per agreement.* Montoya also attacks the trial court's finding that Superior clearly disclosed to Montoya that unpaid invoices would incur late charges of two percent per month on the open account. Montoya maintains there was no evidence that it agreed to the imposition of a rate higher than that authorized by statute. *See* NMSA 1978, § 56–8–5 (Repl.Pamp.1986). "In current or open accounts there shall not be collected more than fifteen percent interest annually ... provided that the parties may set a higher rate by agreement." *Id.* Superior's vice-president testified that it levied a two percent charge on Montoya's unpaid balances. Furthermore, the invoices, which detailed the charges Montoya incurred for the various pours on the Blount job, state: "Past

due accounts are charged 2% per month on the unpaid balance. This is an annual interest rate of 24%." The record reveals substantial evidence to support the trial court's finding that the interest rate charged against the open account, which was above the statutory amount, was agreed to by the parties.

 *Modification, consideration.* Montoya contends the modification should fail for lack of consideration. Montoya maintains that since Superior merely agreed to continue performing as it had under the initial agreement, Montoya received nothing more than it had before the modification. However, the testimony presented by Vaughn was that, in consideration of the hourly surcharge, he agreed to continue in face of pours substantially below the guaranteed minimum. Forbearance may be consideration when "either an express agreement to forbear exists or [when] the circumstances otherwise suggest that a contract ought to be enforced by implying such an agreement." *Spray v. City of Albuquerque*, 94 N.M. 199, 200–01, 608 P.2d 511, 512–13 (1980). There was substantial evidence that the modification was supported by consideration.

 *Modification, burden of proof.* Montoya next submits that in finding an oral modification of the contract the proof necessary to support the finding should be evidence beyond a preponderance. Relying on *Archuleta v. Velasquez*, 60 N.M. 97, 287 P.2d 989 (1955), Montoya argues that the oral modification here should be established by clear and convincing evidence. We do not agree. *Archuleta* held that evidence of the rescission of a written contract by subsequent parol agreement must be "clear, positive and above suspicion." *Id.* at 99, 287 P.2d at 991; *see also A & P Constr. Co. v. Dorn*, 79 N.M. 292, 442 P.2d 782 (1968); *Driver–Miller Plumbing, Inc. v. Fromm*, 72 N.M. 117, 381 P.2d 53 (1963). The facts of this case are clearly distinguishable from *Archuleta*. We find no support for holding the oral modification of a prior oral contract must be established by clear and convincing evidence.

*Merger.* Montoya asserts that any oral modification claimed by Superior was merged into the invoices and cannot be enforced because each invoice reflects charges on a per cubic yard and not an hourly basis. Further, each invoice states: "Except as otherwise mutually agreed in writing this document is the entire agreement of the parties and supercedes any and all other agreements or understandings written or oral."

 The doctrine of merger is a contract principle that prior agreements on the same subject matter are presumed to be included in the final contract. *See Continental Life Ins. Co. v. Smith*, 41 N.M. 82, 64 P.2d 377 (1937). Merger applies only to successive agreements that encompass the same subject matter and contain inconsistent terms. Under these conditions, an antecedent agreement is deemed to have merged into the more recent contract. *Dartmouth Sav. Bank v. F.O.S. Assocs.*, 145 Vt. 62, 69, 486 A.2d 623, 627 (1984). Generally, one contract will not merge into the other unless it is plainly shown such was the intent of the parties. *Foote v. Taylor*, 635 P.2d 46 (Utah 1981).

 The evidence relied upon to establish the terms of the oral modification demonstrated that it was the intent of the parties to continue to bill at the cubic yard rate until the completion of the project when the price difference would be reconciled. The invoices, therefore, do not contain terms inconsistent with the oral modification. The doctrine of merger is inapposite here.

 *Attorney fees on appeal, prior limitation overruled.* Finally, we address an issue raised by Superior in its answer brief. In addition to reasonable attorney fees incurred at trial, Superior maintains that upon remand we should allow the district court to set reasonable attorney fees for this appeal. Section 36–2–39 provides that "[i]n any civil action in the district court, small claims court or magistrate

court to recover on an open account, the prevailing party may be allowed a reasonable attorney fee set by the court, and taxed and collected as costs." In previously addressing this issue, this Court summarily concluded that the statute did not authorize attorney fees on appeal. *Otis Engineering Corp. v. Grace*, 86 N.M. 727, 527 P.2d 322 (1974); *Southwestern Portland Cement v. Beavers*, 82 N.M. 218, 478 P.2d 546 (1970).

In revisiting this issue, we fail to see the logic of that position. We do not read the statute to limit specifically the award of attorney fees to those fees incurred at the trial level. "[T]he statute is designed to prevent the threat of litigation as a tactic either to avoid paying just debts or to enforce false claims." *Cutter Flying Serv., Inc. v. Straughan Chevrolet, Inc.*, 80 N.M. 646, 649, 459 P.2d 350, 353 (1969). If the statutory purpose is to dissuade parties from litigating on open accounts except where both are convinced of the correctness of their position, *see id.*, that purpose is fostered by allowing reasonable attorney fees to the prevailing party on appeal as well as at trial. We specifically overrule *Otis Engineering Corp.* and *Southwestern Portland Cement.*

We affirm the judgment of the trial court in its entirety and we remand to allow the trial court to establish reasonable attorney fees for this appeal.

IT IS SO ORDERED.

STOWERS and BACA, JJ., concur.