795 P.2d 1006

**Gregory L. HALE and Donna M. Hale, his wife, Plaintiffs–Appellees and Cross–Appellants,**

v.

**BASIN MOTOR COMPANY, Defendant–Appellant and Cross–Appellee.**

No. 18426.

Supreme Court of New Mexico.

June 28, 1990.

As Clarified July 30, 1990.

Frank J. Gallegos, Farmington, for defendant-appellant and cross-appellee.

Poole, Tinnin & Martin, P.C., Jason W. Kent, Albuquerque, for amicus curiae New Mexico Automotive Dealers Ass'n.

Larry T. Thrower, Farmington, for plaintiffs-appellees and cross-appellants.

## OPINION

RANSOM, Justice.

Basin Motor Company appeals a decision awarding Gregory and Donna Hale damages resulting from a violation by Basin Motor of the Unfair Practices Act, NMSA 1978, Sections 57–12–1 to –22 (Repl.Pamp. 1987 and Cum.Supp.1989) (commonly known as the Unfair Trade Practices Act). We affirm in part, reverse in part, and remand with instructions.

On October 19, 1985, the Hales purchased a 1985 Buick Riviera from Basin Motor Company. The car was sold as a "new demonstrator." Several months after the purchase, the finish on the right front fender, right door, and right door pillar began to oxidize, fade, and distort. The Hales learned from a third party that the car had been in an accident and repaired by Basin Motor prior to the Hales' purchase of the car. The Hales showed the car to Bino Martinez of Martinez and Snider Motor Company of Farmington. He said he would value the car at its NADA wholesale book price of $10,175 if it had been undamaged, but, because it had been wrecked and was in need of a paint job, he would value it at $9,175. The Hales had the car repainted for $840, and eventually traded it in on a new car. The amount allowed on trade-in was $9,000 for the car's appraised value, and an additional $949 as an over-allowance to make the deal and pay off the remainder of the $9,749.50 the Hales owed on the car.

The Hales brought suit against Basin Motor in November 1987 for violating the Unfair Trade Practices Act and for fraud. Specifically, they claimed that Basin Motor willfully misrepresented the condition of the car and failed to provide them with an affidavit describing the damage to the car as required by Section 57–12–6. Under their fraud claim they alleged that, with

the intent to deceive the Hales and receive a price for the car that exceeded its market value, Basin Motor concealed the fact that the car had been wrecked.

The case was tried without a jury. The court entered findings of fact and conclusions of law generally in favor of the Hales. It found that Basin Motor willfully violated Section 57–12–6 in failing to disclose to the Hales the repairs to the car, and willfully and knowingly violated Section 57–12–2(D)(6) (representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand). The court determined the Hales were damaged in the amount of $425.50, using as the measure of damages the $10,175 value the car would have had without damage, less the $9,749.50 payoff value of the loan, which the court found to be the "true value" given for the car on trade-in. It then trebled the damages pursuant to the 1987 amendment to Section 57–12–10(D), resulting in an award of $1,276.50. The court refused the requested findings of the Hales on common-law fraud and punitive damages. It found that the trebling of damages was punitive in nature, which precluded an additional punitive damage award. The court also awarded attorney fees of $7,741.93, and costs of $954.27.

On appeal, Basin Motor claims the court erred in (1) finding that it violated the Unfair Trade Practices Act, (2) awarding damages to the Hales, (3) trebling those damages, and (4) awarding certain costs. The Hales cross-appeal, claiming that the court erred by (1) using the wrong measure of damages, (2) excluding common law fraud and punitive damages from the judgment, and (3) failing to award as costs "lost paid vacation time." The Hales also claim they are entitled to attorney fees and costs on appeal.

■ *Violation of the Unfair Trade Practices Act.* Section 57–12–2(D)(6), "representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand," is a specific example listed in the Act of an unfair trade practice. The subsection applies to the sale of all goods including automobiles. We agree with Basin Motor that there was no violation of the Act under this subsection. There is no substantial evidence to support a conclusion that Basin Motor represented that the car was "new" as that term is used in Section 57–12–2(D)(6). Basin Motor represented that the vehicle had been used as a demonstrator. The vehicle apparently had been driven for several thousand miles, and the Hales even had requested that certain minor repairs be taken care of before they took delivery. A statement by Basin Motor that the vehicle was a "new demonstrator" may well have been misleading in light of the undisclosed collision damage and repairs, and in that manner the representation may have come within the terms of the *general* definition of an unfair trade practice, *see* NMSA 1978, Section 57–12–2(D); however, we cannot conclude Basin Motor's representation was intended to suggest that the vehicle was unused or "new." This is the import of the specific Section 57–12–2(D)(6).

There is, however, substantial evidence to support the finding of an unfair trade practice based upon a violation of Section 57–12–6(B) and we direct our attention solely to that subsection of the Act. Section 57–12–6(B) is applicable only to motor vehicles. The provision requires the seller of a motor vehicle to furnish the purchaser with an affidavit that (1) describes the vehicle, and (2) states to the best of the seller's knowledge whether there has been an "alteration or chassis repair due to wreck damage." NMSA 1978, § 57–12–6(B).[1]

■ Rejecting the Hales' argument that the "alteration" language of Section 57–12–6(B) applies to any change due to wreck damage, we agree with Basin Motor that the phrase "due to wreck damage" modifies only "chassis repair" and not "alteration." As we understand the plain meaning of the subsection, a vehicle might be deemed altered regardless of whether it

---

**1.** Private sales are exempt from the requirement that the seller furnish a disclosure affidavit, unless the purchasing party requests one. NMSA 1978, § 57–12–6(C).

had been wrecked. If the legislature had intended to limit the entire subsection to wreck damage it clearly could have required, "in the event of wreck damage, the seller shall provide an affidavit stating whether there has been any alteration or chassis repair."

■ As a rule of construction, the word "or" should be given its normal disjunctive meaning unless the context of a statute demands otherwise. *Public Serv. Co. v. New Mexico Public Serv. Comm'n*, 106 N.M. 622, 747 P.2d 917 (1987). Thus, the term "alteration" stands alone and must be interpreted by itself. This interpretation follows from the doctrine of the "last antecedent." "[R]elative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." *In re Goldsworthy's Estate*, 45 N.M. 406, 412, 115 P.2d 627, 631 (1941); *Garcia v. Schneider, Inc.*, 105 N.M. 234, 731 P.2d 377 (Ct.App.1986). A contrary interpretation of the statute would limit severely the circumstances under which disclosure of alteration is required. We believe the legislature did not intend to enact so narrow a provision, and one so lacking in a reasonable relationship to the purposes of the Unfair Trade Practices Act.

■ We further agree with Basin Motor that not just any change in the condition of a motor vehicle from its original state will trigger the disclosure requirements of Section 57–12–6(B). The disclosure requirement is intended to protect consumers from deceptive business practices that negate reasonable expectations. Therefore, within the context of Section 57–12–6(B), goods are "altered" if, as measured against the reasonable expectations of the consumer, the characteristics or value of the motor vehicle is affected in a meaningful way. *Cf. Boulevard Chrysler–Plymouth, Inc. v. Richardson*, 374 So.2d 857, 859 (Ala.1979) (car is not "new" if not in accord with reasonable expectations of "new" car purchaser); *Watkins v. Roach Cadillac, Inc.*, 7 Kan.App.2d 8, 13, 637 P.2d 458, 463

(1981) (car is altered if materially different from that which it is held out to be).

■ In this case, the evidence of the body repairs made to the car was sufficient evidence for the trial court to have concluded that the characteristics or value of the car was affected in a meaningful way. The repairs entailed more than just substituting one standardized part with a new one. The repairs were ones that would affect the value of the motor vehicle in the eyes of a consumer. The evidence showed that the right front fender was replaced, the right door frame was straightened, holes were drilled in the door panel to pull out a dent, the sheet metal in the damaged area was ground down and resurfaced with body filler, and the damaged area was repainted. This is sufficient evidence to support the trial court's finding that the vehicle was altered within the meaning of Section 57–12–6(B) and that the repairs should have been disclosed by affidavit.

■ Basin Motor also argues that the court erred in finding a violation of the Unfair Trade Practices Act because the Act requires a showing of multiple violations. The Act does not so require. *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 102, 753 P.2d 346, 348 (1988) (expressing disagreement with *In re Klein*, 39 B.R. 20 (Bankr.D.N.M.1984) to the extent *Klein* held that the Act applied only to recurring conduct).

*Damages issues.* Basin Motor claims that the court erred in its calculation of damages because the Hales actually suffered none, and even if damages were suffered, they should not have been trebled. In their cross-appeal the Hales claim the court applied the wrong measure of damages. We will consider these issues together.

■ The Unfair Trade Practices Act provides that:

Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actu-

al damages or the sum of one hundred dollars ($100), whichever is greater. NMSA 1978, § 57–12–10(B) (Repl.Pamp. 1987). The trial court heard testimony that several months after the purchase of the vehicle the finish on the repaired and re-painted portions noticeably began to oxidize and fade. An expert testified that it was necessary to repaint the entire car at a cost of $840. This was sufficient evidence of a "loss of money" to support an award. The parties, however, differ on how damages should be calculated. The court adopted its own measure.

■ Basin Motor points to the appraised value of $9,000 allowed on trade-in. Basin Motor argues that since the Hales spent $840 in making the vehicle more attractive, and they sold it for $9,949 (the $9,000 appraised value plus the $949 over-allowance), they "actually enjoyed a gain of $109." This argument is completely without merit. Whatever may have motivated the automobile dealer to give the Hales an amount in excess of the appraised value, nothing suggests that the value of the repairs the Hales made to the vehicle was not taken into consideration in the $9,000 appraisal.

■ The Hales claimed as damages only the cost of the repairs. They did not request an additional amount for diminution of value to the vehicle. If repairs fail to restore personal property to its original fair market value a party may recover the difference. *Fredenburgh v. Allied Van Lines, Inc.*, 79 N.M. 593, 446 P.2d 868 (1968); SCRA 1986, 13–1817 (jury instructions for damage to personal property based upon repairs plus depreciation). One's right to recover the cost of repairs, however, is limited. The cost of repairs must be compared to the *difference* between the fair market value of the property *before and after the damage* took place. A party can recover only the smaller of these amounts, the cost of repairs or the differential. *Fredenburgh*, 79 N.M. at 596, 446 P.2d at 871; SCRA 1986, 13–1816.

Here, the court seems to have based its award on what it believed was the difference between the fair market value of the vehicle if undamaged ($10,175) and the fair market value of the vehicle at the time of trade-in ($9,749.50), or *after the repair.* We conclude that the court applied an incorrect measure of damages. The actual damages in this case should be based upon the cost of the repairs, $840.[2]

■ Basin Motor also appeals the court's trebling of the award pursuant to NMSA 1978, Section 57–12–10(B). That provision states in pertinent part:

> Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

This sentence was added to the statute on June 19, 1987. Basin Motor claims that since the sale of the vehicle took place in 1985, the trebling provision is not applicable. Substantive duties, rights, and obligations arise under and are determined by the law in effect at the time of the conduct in question. *See Ashbaugh v. Williams*, 106 N.M. 598, 747 P.2d 244 (1987).

Substantive rights are to be distinguished from procedural or remedial rights that prescribe methods of obtaining redress or enforcement of substantive rights. *Romero v. New Mexico Health & Envtl. Dep't*, 107 N.M. 516, 760 P.2d 1282 (1988). We have discussed the effect of the distinction between remedial and substantive legislation in *Gray v. Armijo*, 70 N.M. 245, 372 P.2d 821 (1962). Remedial statutes are applied retroactively. *Id.* In this case the trebling provision does not create new duties, rights or obligations under the law. Instead, it provides an additional remedy to enforce substantive rights already recognized by the Unfair Trade Practices Act. As the provision is remedial in nature it

---

**2.** The Hales introduced sufficient evidence to conclude that the cost of repairs was smaller than the difference between the fair market value of the vehicle before and after the damage took place. Martinez estimated the reduction in value as $1,000.

applies retroactively, thus the court properly could treble the damage award.

*Common-law fraud.* The Hales assert entitlement to punitive damages based on common-law fraud in addition to the treble damages they received under the Unfair Trade Practices Act. They cite Section 57–12–10(D) of the Act, which states: "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state."

New Mexico does not allow duplication of damages or double recovery for injuries received. *Hood v. Fulkerson*, 102 N.M. 677, 699 P.2d 608 (1985); *Industrial Supply Co. v. Goen*, 58 N.M. 738, 276 P.2d 509 (1954). Cases in other jurisdictions involving consumer protection or unfair trade practice claims suggest no exception to this rule. *E.g., Linthicum v. Archambault*, 379 Mass. 381, 398 N.E.2d 482 (1979) (where plaintiff has valid breach of contract claim in addition to claim under consumer protection act, plaintiff cannot recover multiple damages, but can recover costs and attorney fees under the consumer protection act in addition to breach of contract damages); *see also Roberts v. American Warranty Corp.*, 514 A.2d 1132 (Del.1986) (additional punitive damages based upon same conduct not allowed when actual damages have been multiplied pursuant to unfair trade practices act); *Bill Terry's Inc. v. Atlantic Motor Sales, Inc.*, 409 So.2d 507 (Fla.Dist.Ct.App.1982) (same). Multiplication of damages pursuant to statutory authority is a form of punitive damages. *Roberts*, 514 A.2d at 1135. We agree with Basin Motor that recovery of both statutory treble damages and punitive damages based upon the same conduct would be improper. As we read Section 57–12–10(D), the legislature created a new statutory remedy in addition to those otherwise available, but did not suggest that a party would be entitled to multiple awards of damages arising out of the same conduct.

When a party may recover damages under separate theories of liability based upon the same conduct of the defendant, and each theory has its own measure of damages, the court may make an award under each theory. In that event the prevailing party must elect between awards that have duplicative elements of damages. *See Hood v. Fulkerson*, 102 N.M. at 680, 699 P.2d at 611. Here, the possibility was open to the court to consider both treble damages under the Unfair Trade Practices Act and, if proven, a punitive damage award for fraud. The Hales could accept the greater of the two awards. *Cf. Bill Terry's Inc.*, 409 So.2d at 509 (court may award either punitive damages for common-law fraud or treble damages under federal odometer disclosure law, whichever is greater).

In this case, the trial court refused to accept the requested findings of either party on the issue of fraud. Ordinarily, we would regard this refusal as a finding against the Hales, the party with the burden of proof on this issue. *Worthey v. Sedillo Title Guar., Inc.*, 85 N.M. 339, 512 P.2d 667 (1973). Here, however, the trial court's conclusion of law number six leads us to believe the court was under the impression that it was precluded from considering a punitive award for any fraud committed by Basin Motor.[3] This is not the case. Common-law fraud, if proved, may form the basis for a separate punitive award subject to an election by the Hales. On remand, the court shall consider whether fraud was proved, and, if so, what amount of punitive damages is appropriate.

*Costs and attorney's fees.* The trial court awarded costs of $954.27 to the Hales. In its brief in chief, Basin Motor claims error in including as costs the travel expenses of plaintiffs' counsel while investigating other possible violations of the Un-

---

**3.** Conclusion of law number six, the only finding or conclusion of the court that addressed the fraud and punitive damage issues, stated that, while defendant's acts were done willfully and with intent to defraud, the trebling of damages contained in remedial Section 57–12–10 "is punitive in nature and is contemplated by the Legislature to be the punitive damages to be awarded in such an action and therefore no additional punitive damages will be awarded."

fair Trade Practices Act. The award of $954.27 for costs, however, did not include this disputed charge, as the Hales in their answer brief correctly have noted. In its reply brief, Basin Motor stated that it "misspoke" and informs the Court that the objectionable charge was instead included in the award of attorney fees. We, however, decline to address this issue since it is raised for the first time in the reply brief. *Cf. Doe v. City of Albuquerque*, 96 N.M. 433, 631 P.2d 728 (Ct.App.1981).

In their cross-appeal, the Hales claim they should have been awarded "lost paid vacation time" in the amount of $1,041.10 as "damages or costs." They testified that they used paid vacation time from their employment in order to prepare for and appear at depositions and trial. As the Hales admit, however, at the trial court level they did not seek this "lost paid vacation time" as part of their claim for *damages*. Whether or not this alleged amount should be included in the damage award cannot be raised for the first time on appeal. *See, e.g., Citizens State Bank v. Christmas*, 107 N.M. 220, 755 P.2d 64 (1988); *see also* SCRA 1986, 1–052(B)(1)(f). We may have looked favorably on such a damage claim if one actually had been made. Certainly, high among the factors motivating legislatures to enact laws such as we are considering today is the frustration experienced by consumers having to run around to straighten out unfair or deceptive trade practices.

The Hales, however, requested the award of $1,041.10 as part of their *costs* for the investigation and preparation of their case. The request was denied. We do not believe costs in unfair trade practices litigation should be treated any differently than costs in other cases. A statutory award of costs is intended to reimburse the prevailing party for the expenses incurred in litigation. *Mills v. Southwest Builders, Inc.*, 70 N.M. 407, 418, 374 P.2d 289, 296 (1962). The award lies within the sound discretion of the trial court. *South v. Lucero*, 92 N.M. 798, 595 P.2d 768 (Ct.App.), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979). Even if argu-

ably a recoverable cost, we see no abuse of discretion in excluding "lost paid vacation time" here.

Lastly, the Hales claim they are entitled to attorney fees and costs on appeal. Section 57–12–10(C) states in part that: "The court shall award attorney's fees and costs to the party complaining of an unfair or deceptive trade practice * * * if he prevails." There are no New Mexico cases addressing the question of whether this provision applies to an appeal as well as the action in the trial court.

In the recent case of *Superior Concrete Pumping, Inc. v. David Montoya Constr., Inc.*, 108 N.M. 401, 773 P.2d 346 (1989), this Court was presented with the question of whether attorney fees on appeal were allowed for open account cases, pursuant to NMSA 1978, Section 36–2–39 (Repl.Pamp.1984 & Cum.Supp.1989) (now recompiled as NMSA 1978, Section 39–2–2.1 (Cum.Supp.1989)), which states: "In any civil action in the district court, small claims court or magistrate court to recover on an open account, the prevailing party may be allowed a reasonable attorney fee * * *." Faced with this language, we said:

> We do not read the statute to limit specifically the award of attorney fees to those fees incurred at the trial level. "[T]he statute is designed to prevent the threat of litigation as a tactic either to avoid paying just debts or to enforce false claims." If the statutory purpose is to dissuade parties from litigating on open accounts except where both are convinced of the correctness of their position, that purpose is fostered by allowing reasonable attorney fees to the prevailing party on appeal as well as at trial.

*Superior Concrete*, 108 N.M. at 405, 773 P.2d at 350 (citations omitted). A similar rationale for the inclusion of attorney fees on appeal is fully applicable here. First, Section 57–12–10(C) does not by its own terms limit itself to fees and costs incurred at the trial court level. Second, the award of attorney fees and costs on appeal is entirely consistent with the statutory purpose of creating a private remedy to re-

dress wrongs resulting from unfair or deceptive trade practices. This award to parties who successfully press their claims, and uphold them on appeal, makes the private remedy an effective one, especially in view of the sometimes minor nature of the damage claim that the statute specifically contemplates, $100 to $300.

We affirm the judgment of the district court in its finding of a violation of Section 57-12-6(B) of the Unfair Trade Practices Act, however, we reverse the damages award. On remand the district court shall redetermine the damages award based upon the cost of repairs ($840), and shall enter findings of fact and conclusions of law on the issue of fraud and punitive damages. The Hales must elect between any punitive damage award based upon fraud, and any award of damages under the Unfair Trade Practices Act that is increased pursuant to Section 57-12-10(B). The district court shall award the Hales such attorney fees as the court finds reasonable for services on appeal.

IT IS SO ORDERED.

SOSA, C.J., concurs.

MONTGOMERY, J., specially concurs.

MONTGOMERY, Justice (specially concurring).

I join in the majority opinion, except for the Court's explanation of the reason for our holding that the Hales were properly awarded treble damages for Basin Motor's violation of the Unfair Practices Act in 1985. In my view, the distinction between "substantive" and "remedial" legislation is singularly unhelpful in resolving an issue such as the one with which we are presented here. The problem is that, like many legal concepts, these terms denote ideas whose meaning at the core is fairly clear but which become vague and confusing at the periphery, often overlapping with the meaning of terms with which they are juxtaposed.

In this case, for example, it is fairly easy to regard the effect of the 1987 statutory amendment as creating rights and obligations which did not exist before the amendment was enacted. Under the law in effect at the time Basin Motor violated the Unfair Practices Act and at the time the Hales were damaged by having to have their car repainted, the Hales were entitled to reimbursement of those damages and Basin Motor's obligation was to compensate them for the loss. When the legislature amended the statute, it created a new right in the Hales—a right to treble damages—and it enlarged Basin Motor's obligation, if a violation of the Act was proved, to that of reimbursing the Hales threefold.[1]

A better way of resolving the question than categorizing the amendment as "remedial" rather than "substantive" is to focus on the purpose of the legislation. (After all, that is the nature of the exercise in which we are engaged: statutory construction. The attempt is to determine and apply the intent of the legislature in amending the Act, and this can best be done, in my view, by trying to discern the purpose of the amendment and adopt that interpretation which best effectuates it.) The majority opinion says, in a somewhat different connection, that the statutory purpose is to create a private remedy to redress wrongs resulting from unfair and deceptive trade practices. This overall purpose can be further elaborated as being (1) to deter unfair or deceptive trades practices (i.e., violations of the Act) and (2) to provide an incentive for seeking redress of these often relatively minor (in amounts of damages) infractions. The first objective-deterrence—can be neither advanced nor frustrated by making the treble-damage remedy applicable to a violation occurring years before its enactment. The second objective, however, is subserved by permitting a claimant to seek treble damages in a suit initiated after the effective date of the legislation, even though the suit seeks relief on account of a cause of action arising before the statute was amended. I therefore agree that the

1. Surely the difference between substantive and remedial legislation cannot be that the former applies where a new right or obligation is created, whereas any expansion or contraction of that right—no matter how extensive—is only remedial.

trial court properly awarded treble damages to Mr. and Mrs. Hale.

On another, minor point: I do not necessarily agree that we might look favorably on a claim for "lost paid vacation time" as compensable damages under the Act. That would depend on whether the statute should be construed to permit recovery of consequential damages as well as recovery for the difference in the value of the property plus cost of repairs, if any. That issue is not properly presented on this appeal, and I express no opinion with respect to it.