**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date: August 12, 2014**

**Docket No. 32,199**

**CHARLES E. MARTIN and**
**PATRICIA G. MARTIN,**

      **Plaintiffs-Appellants,**

**v.**

**COMCAST CABLEVISION**
**CORPORATION OF CALIFORNIA, LLC,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sheri A. Raphaelson, District Judge**

J. Ronald Boyd
Santa Fe, NM

for Appellants

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Robert L. Lucero
Albuquerque, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** Charles and Patricia Martin (collectively, Appellants) sued Comcast Cablevision Corporation of California, LLC (Comcast) for trespass. Having prevailed in the district court, they now appeal the amount and nature of the damages awarded. Appellants argue that the district court erred in awarding a lower amount for statutory rent than they requested and in not awarding restitution for unjust enrichment or punitive damages. We affirm.

1

**BACKGROUND**

**{2}** Appellants live on a residential lot located in White Rock, New Mexico. The property is burdened by an easement along its east boundary within which stand two utility poles. Two cables—one for electric power and one for telephone service—were strung on the poles. In early May 1999 Mr. Martin noticed that a third cable, which he identified as a cable television line, had been strung on the poles without his knowledge or permission. The date the third cable was installed is unknown. For ease of reference and because the electrical and telephone cables are not at issue here, we will refer to the television cables as "the cable(s)."

**{3}** Mr. Martin immediately objected to the presence of the cable to Mickelson Media, the predecessor in interest to Comcast. Roughly a month later, Mr. Martin delivered to Mickelson Media a letter demanding payment of rent of $800 per month or removal of the cable. Later he proposed an alternate pricing scheme in which the rent amount would be decreased or eliminated depending on Mickelson Media's satisfaction of certain conditions, such as placing the cable underground. After Mr. Martin also threatened to remove the cable himself using a "pneumatic rotary cutter," Mickelson Media obtained an injunction barring Mr. Martin from removing the cable. At least one additional cable was later installed.

**{4}** Comcast purchased Mickelson Media in 2000 or 2001 and became the owner of the cables. Mr. Martin continued to object to the presence of the cables and ultimately filed the present suit in 2009. After a bench trial, the district court entered written findings of fact and conclusions of law in which it granted Appellants' request for ejection of the cables from their property, required all Comcast cable television cables in Appellants' subdivision to be buried, and awarded Appellants damages of $200 per month "for diminished use and enjoyment of their property" running from June 1999 until the cables are buried. Since it concluded that Comcast did not act wilfully and deliberately, it denied Appellants' request for $1 million in punitive damages. With a few exceptions, which are addressed in our discussion of Appellants' arguments, Appellants do not challenge the district court's findings of fact. We therefore do not detail the unchallenged findings. An unchallenged finding of the district court is binding on appeal. *See Stueber v. Pickard*, 1991-NMSC-082, ¶ 9, 112 N.M. 489, 816 P.2d 1111.

**{5}** Finally, we note that the parties stipulated to amendment of the judgment to reflect certain damages noted in the district court's findings of fact but omitted from the conclusions of law and final judgment. The district court entered a finding of fact to the effect that Appellants are entitled "to collect statutory rent from [Comcast of] $200 per month." But neither the conclusions of law nor the final judgment reflect this finding. Hence, after mediation of this issue, the parties agreed that the judgment should be modified to reflect the district court's finding of fact and that Appellants could challenge the amount of the statutory rent on appeal.

**DISCUSSION**

**{6}**     Appellants raise three issues on appeal.  First, they maintain that the district court should have awarded them statutory rent of $800 per month, rather than $200 per month. Second, they argue that the district court erred in not ordering Comcast to pay $2000 per month as restitution for its unjust enrichment.  Third, Appellants argue that it was error to not award punitive damages.  We address each argument in turn.

## Amount of Statutory Rent

**{7}**     As outlined above, the parties stipulated that the district court's conclusions of law and the final judgment should have included an award for statutory rent in addition to the damages awarded for loss of enjoyment.  They also stipulated that Appellants could appeal the amount of statutory rent awarded.  Consistent with the stipulation, Appellants' first argument is that the district court erred in finding Comcast liable for statutory rent in the amount of $200 per month, rather than the $800 per month that Appellants requested.  They argue that the higher amount should have been awarded because "[n]obody under New Mexico law can control the rent [they] ask for" and "[t]he $800 per month rent is reasonable, considering the trouble and expense Defendant has put [Appellants] through."  Appellants rely on NMSA 1978, Section 42-4-9 (1907), which states that "[i]f the plaintiff prevail[s in an ejectment action], he shall recover for damages the value of the rents and profits of such premises."  Since this language does not state whether the value should be based on an objective standard or a subjective standard, Appellants maintain that the district court should have ordered the amount set by Appellants.

**{8}**     Appellants' position—that their subjective assessment of appropriate rent must be honored—is contrary to the purpose behind damages in ejectment, which is compensation of the rightful possessor.  *See* 28A C.J.S. *Ejectment* § 239 (2014) ("Compensation constitutes the purpose and basis of damages in actions or proceedings to recover mesne profits or damages in ejectment."); Dan B. Dobbs, *Law of Remedies* § 1.1, at 3 (2d ed. 1993) ("The damages remedy is a money remedy aimed at making good the plaintiff's losses.").  It is also contrary to the general rule that "compensation is ordinarily the fair or reasonable rental of the land for the time . . . the defendant was in wrongful possession."  28A C.J.S. *Ejectment* § 239 (2014); *accord Hertz v. Hertz*, 1983-NMSC-004, ¶ 39, 99 N.M. 320, 657 P.2d 1169 (remanding to the district court to determine whether there had been an ouster of a cotenant and, if so, to "consider[] the fair rental value of the property" in determining the amount owed to the ousted cotenant); Dobbs, *supra*, § 5.8(2), at 530 ("The rental market value of the land . . . represents the value of possession or use.").  Finally, it runs against the principle that an award of damages must be based on evidence adduced at trial, the corollary to which is that the amount of damages is an objective measure.  *See Sanchez v. Martinez*, 1982-NMCA-168, ¶ 20, 99 N.M. 66, 653 P.2d 897 ("A party seeking to recover damages has the burden of proving the existence of injuries and resulting damage with reasonable certainty."); Dobbs, *supra*, § 5.8(2), at 530 ("Rental value is ordinarily an objective measure, based on an estimate of the price others would pay to rent the land, not on what the trespasser personally would pay.").

**{9}** Here, Mr. Martin testified that he asked Comcast for $800 per month "to get[] them to . . . remove the cable from [his] yard." He specified that the purpose of his fee schedule was to get Comcast to remove their equipment, "not to collect rent." He also stated that he selected the $800 amount because he "wanted it to be big enough so it was enough trouble for them to alleviate this problem by removing this cable from my property. I do not want to rent an easement." Thus, by Mr. Martin's own admission, $800 per month is an amount a tenant would find so unreasonable that it would prefer to remove the cables than keep them in place. We discern no error in the district court's rejection of this amount.

**Unjust Enrichment**

**{10}** Appellants next argue that the district court should have awarded restitution for Comcast's unjust enrichment in the form of a portion of the profits Comcast earned by providing cable service while the cables ran across Appellants' property. They base this contention on the fact that the district court found that "[f]or the period of time Defendant and its predecessor have been trespassing, they have been utilizing [Appellants'] property for their financial gain, i.e., unjustly enriched. Their enrichment has been at least $2,000 per month." In spite of this finding, the district court did not enter a conclusion related to restitution and the final judgment does not include an order for restitution.

**{11}** "The restitutionary goal is to prevent unjust enrichment of the defendant by making him give up what he wrongfully obtained from the plaintiff." Dobbs, *supra*, § 1.1, at 4. Damages for unjust enrichment differ from compensatory damages in that "[t]he measure of compensatory damages is the plaintiff's loss or injury, while the measure of restitution is the defendant's gain or benefit." *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 12, 121 N.M. 840, 918 P.2d 1340; *see* Dobbs, *supra*, § 1.1, at 4. Restitution is an equitable remedy. *See Arena Res., Inc. v. Obo, Inc.*, 2010-NMCA-061, ¶ 15, 148 N.M. 483, 238 P.3d 357.

**{12}** Because the district court entered a finding of fact specifically on unjust enrichment, including the amount by which Comcast was enriched, it is possible that omission of a corresponding conclusion of law and order for restitution was an oversight as Appellants argue. Nevertheless, we conclude that restitution in the form of profits is not appropriate in this case and therefore affirm. *See Westland Dev. Co. v. Romero*, 1994-NMCA-021, ¶ 2, 117 N.M. 292, 871 P.2d 388 ("An appellate court will affirm a lower court's ruling if right for any reason."). *See Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 26, 115 N.M. 690, 858 P.2d 66 (stating that while it is within the district court's discretion to award equitable remedies, "[s]uch discretion is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law").

**{13}** Here, since nothing was taken from the land, Comcast's gain was simply the rent-free use of Appellants' land. Appellants' argument rests on the premise that Comcast benefitted unjustly because it earned income by providing cable service to customers using the lines crossing Appellants' property. But the provision of cable television and resulting income

4

were the product of Comcast's business enterprise and not the use of Appellants' land. *See* Dobbs, *supra*, § 5.9, at 533 ("If the defendant should be liable to make restitution of gains, they should be gains identified with the land, not gains resulting from his enterprise."). Thus, the benefit to Comcast is better understood as the savings it realized by using Appellants' property without paying for the privilege, i.e., the rental value of the land. *See* 42 C.J.S. *Implied Contracts* § 9 (2014) ("A 'benefit' for purposes of an unjust enrichment claim is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss."); Restatement (Third) of Restitution and Unjust Enrichment § 40 cmt. b (2011) (stating that "[the] more common form [of interference with property] is that the defendant has made a valuable use of the [owner's] property without paying for it" and that "[t]o the extent that the defendant's unjust enrichment may be identified with ordinary rental value, the owner's entitlement to restitution is captured in the claim to damages for 'use and occupation.'"); *cf. Peters Corp. v. N.M. Banquest Investors Corp.*, 2008-NMSC-039, ¶ 32, 144 N.M. 434, 188 P.3d 1185 ("The remedy [of disgorgement] may not be used punitively, and thus a causal connection must exist between the breach and the benefit sought to be disgorged.").

**{14}** Because Appellants were awarded the rental value of the land in compensatory damages, an additional award of rent for unjust enrichment would be duplicative. "New Mexico does not allow duplication of damages or double recovery for injuries received." *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 20, 110 N.M. 314, 795 P.2d 1006; *see Cent. Sec. & Alarm Co.*, 1996-NMCA-060, ¶ 12 ("The plaintiff may be able to pursue several theories of recovery; if liability is found on each, the plaintiff would be required to make an election among awards if duplication or double recovery would otherwise result."). We conclude that Appellants are not entitled to an additional award of rent for unjust enrichment.

**{15}** Appellants rely on the concept of "mesne profits" to support their contention that Comcast should pay $2000 per month of trespass on their property. "Mesne profits" are "the profits which accrue between two given times—and [are] defined as the value of use or occupation of land during the time it is held by one in wrongful possession of it." 25 Am. Jur. 2d *Ejectment* § 49 (2014). We are unpersuaded by Appellants' argument. There is nothing about mesne profits that exempts them from the principle discussed above, which is that a plaintiff is entitled to no more than the amount associated with the benefit derived from the wrongful use of the property itself. *See* Dobbs, *supra*, § 5.8(2), at 531 (stating that cases in which "the trespasser's profits from occupation of the land exceed the rental value . . . raise difficult problems in determining how much of the 'profit' is due to the defendant's labor and how much is due to the plaintiff's property"); *cf.* 66 Am. Jur. 2d *Restitution and Implied Contracts* § 2 (2014) ("The purpose of restitution-based claims, such as unjust enrichment, is not punitive."); *Krejci v. Capriotti*, 305 N.E.2d 667, 670 (Ill. App. Ct. 1973) ("The trial judge could therefore accurately determine the profits wrongfully derived from the use of the land by measuring the fair market rental value for the period of the trespass."). Thus, we conclude that Appellants are not entitled to a portion of Comcast's profits over and above the amount awarded for rental of their property.

**Punitive Damages**

**{16}**     Finally, Appellants argue that the district court erred when it denied their request for punitive damages. They maintain that, although the district court specifically concluded that Comcast had not acted "willfully and deliberately," other findings indicate behaviors that qualify for punitive damages. They also point to evidence in the record that they believe supports an award of punitive damages. We disagree that the district court's findings are inconsistent with its conclusion or that the evidence in the record requires an award of punitive damages.

**{17}**     "We review a [district] court's decision not to award punitive damages for abuse of discretion, and we will only reverse that decision if it is contrary to logic and reason." *Peters Corp.*, 2008-NMSC-039, ¶ 43 (internal quotation marks and citation omitted). "In New Mexico, it is well settled that because the limited purpose of punitive damages is to punish and deter persons from certain conduct, there must be some evidence of a culpable mental state." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 24, 118 N.M. 203, 880 P.2d 300 (internal quotation marks and citation omitted). Hence, such damages are appropriate "only when the wrongdoer's conduct may be said to be maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the plaintiffs' rights." *Green Tree Acceptance, Inc. v. Layton*, 1989-NMSC-006, ¶ 9, 108 N.M. 171, 769 P.2d 84 (internal quotation marks and citation omitted); *see* UJI 13-1827 NMRA. The Uniform Jury Instructions provide further guidance on the conduct that warrants punitive damages: "Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful. Willful conduct is the intentional doing of an act with knowledge that harm may result. Reckless conduct is the intentional doing of an act with utter indifference to the consequences." UJI 13-1827. "[P]unitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

**{18}**     Appellants point to a number of findings as evidence that the district court found willful and deliberate conduct by Comcast. For instance, the district court found that Comcast had "deliberately disregarded" a provision in the franchise agreement requiring cables to be buried in certain neighborhoods and that after Mr. Martin contacted Comcast to request removal of the cables, they were "uncooperative and dismissive of his protest." The district court also found that Comcast was aware that it did not have permission to install cables on Appellants' property as early as May 1999 and that because Comcast violated the franchise ordinance and pole license, its actions were illegal. None of the findings identified by Appellants involve the type of findings necessary to support a punitive damages award because the findings do not pertain to the mental state required. We conclude that the district court's conclusion that Comcast's conduct was not willful and deliberate is not inconsistent with its other findings.

**{19}**     As to Appellants' argument that this Court should remand for entry of punitive

6

damages because there is evidence in the record supporting such an award, we note that "[t]he question on appeal is not whether there is evidence to support an alternative result but, rather, whether the [district] court's result is supported by substantial evidence." *Bagwell v. Shady Grove Truck Stop*, 1986-NMCA-013, ¶ 23, 104 N.M. 14, 715 P.2d 462. We therefore examine the record for evidence that Comcast's conduct did not merit punitive damages rather than the evidence to which Appellants direct us. *See id.* ("The appellate court, in reviewing the [district] court['s] decision, disregards all evidence and all inferences unfavorable to the [district] court's result."). The area vice president of Comcast testified that "[i]t was [Comcast's] understanding that there was a utility easement that we were able to use [on Appellants' property]." He also indicated that, at the time Comcast responded to Appellants' request to remove the cables and based on advice by Comcast's attorney, he understood that Los Alamos County had granted Comcast the right to "use the Martin property for its cables[.]" Comcast's construction coordinator testified that after Appellants made their objection to the cables known, he obtained a plat of the property from the county and discussed it with the construction manager. He testified that he understood the plat to indicate that the poles were situated in a utility easement and that "the cable provider, with a franchise agreement within the municipality, would have a right to be within that utility corridor." This evidence supports the district court's conclusion that Comcast's conduct was not willful or deliberate. *See Padilla v. Lawrence*, 1984-NMCA-064, ¶ 29, 101 N.M. 556, 685 P.2d 964 (affirming denial of punitive damages where "[t]here [was] substantial evidence in the record to support the [district] court's refusal to award [them]"). The district court did not err in denying Appellants' request for punitive damages.

**CONCLUSION**

{20}    For the foregoing reasons, we affirm.

{21}    **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**M. MONICA ZAMORA, Judge**

7