747 P.2d 917

**PUBLIC SERVICE COMPANY OF NEW MEXICO, Appellant,**

v.

**NEW MEXICO PUBLIC SERVICE COMMISSION, Appellee,**

**and**

**New Mexico Industrial Energy Consumers and the Attorney General of the State of New Mexico, Intervenors–Appellees.**

**No. 16608.**

Supreme Court of New Mexico.

Dec. 28, 1987.

Keleher & McLeod, Robert H. Clark, Richard B. Cole, Albuquerque, for appellant.

Steven F. Asher, Charles F. Noble, Santa Fe, for appellee.

Hal Stratton, Atty. Gen., Gary Epler, Asst. Atty. Gen., Santa Fe, for intervenor-appellee Attorney General.

Campbell, Pica & Olson, Lewis O. Campbell, Wayne Shirley, Albuquerque, for intervenor-appellee NM Industrial Energy Consumers.

## OPINION

RANSOM, Justice.

In February, 1986, Public Service Company of New Mexico (PNM) filed an application with the New Mexico Public Service Commission (Commission) which, along with other requests, sought Commission approval of a general diversification plan to restructure PNM into a public utility holding company. In the summer of 1986, the Commission conducted hearings and issued a final order disapproving the restructuring plan. PNM has appealed to this Court for a review of that final order.

At issue is whether the Commission had the statutory authority to disapprove a restructuring prior to its completion and, if it did, whether the Commission abided by its regulations in making its decision. Also at issue is whether there was substantial evidence to support the Commission's order.

We interpret NMSA 1978, Section 62–6–19 (Repl.Pamp.1984) to allow the Commission to disapprove a public utility holding company restructuring prior to its completion. Further, we find that the Commission complied with its applicable regulations and that there was substantial evidence to support the Commission's order of disapproval. We affirm.

PNM contends that Section 62–6–19 should be construed to grant the Commission only the power to issue remedial orders to rectify the adverse effects of a completed holding company restructuring. PNM reads Section 62–6–19 to preclude the Commission from investigating the forma-

tion of the holding company until it is a completed event.

PNM bases its interpretation of the verb tense employed by the legislature in drafting Subsections 62–6–19(B) and (C) relating to Class II transactions, defined as including "the formation * * * of a * * * public utility holding company by a public utility or its affiliated interest * * *." NMSA 1978, § 62–3–3(K) (Repl.Pamp.1984). PNM maintains that if the legislature intended the Commission to have the power of prior approval over holding company restructurings, then Subsections 62–6–19(B) and (C) would have been written in the future tense. Subsection 62–6–19(B) provides that:

> In order to assure reasonable and proper utility service at fair, just and reasonable rates, the commission may investigate:
>
> \*  \*  \*  \*  \*  \*
>
> (2) Class II transactions or the resulting effect of such Class II transactions on the financial performance of the public utility to determine whether such transactions or such performance *have* an adverse and material effect on such service and rates.

(Emphasis added.)

Similarly, Subsection (C) requires a public utility company engaging in a Class II transaction to demonstrate that such transaction *has not* materially and adversely affected the utility's ability to provide service at reasonable rates.

PNM claims that use of the present tense indicates that the Class II transaction must already have taken place before the Commission may investigate. According to PNM, if the legislature had contemplated prior approval of holding company restructurings, it would have used words such as *"will* have an adverse and material effect" and *"will* not affect."

"Unless a contrary intent is clear, courts will read and give effect to statutes as written, attributing to the words their plain meaning." *Waksman v. City of Albuquerque,* 102 N.M. 41, 43, 690 P.2d 1035, 1037 (1984). Subsection 62–6–19(B) authorizes the Commission to investigate Class II

transactions such as the *formation* of a holding company. "Formation" entails the act of giving form or shape to something or of taking form. *Webster's Third New International Dictionary* 893 (1971). Clearly, PNM was engaged in the formation of its holding company structure when the Commission investigated to determine any adverse and material effect on service and rates. The formation of PNM's holding company involved several steps, one of which was to seek Commission approval. Additionally, PNM had to obtain approval from the Securities and Exchange Commission (SEC) and from PNM's shareholders. Prior to the Commission hearing, PNM had filed its SEC registration statement and had presented its corporate reorganization proposal to its stockholders.

Use of the present tense within Section 62–6–19 does not establish that the legislature only intended the Commission to investigate completed Class II transactions. On the contrary, the statute grants the Commission the authority to investigate the act of giving form or shape to a public utility holding company to determine the formation's adverse and material effect on service and rates.

■ Further, Section 62–6–19 speaks of Class II transactions *or* their resulting effect. The word "or" is given a disjunctive meaning unless the context of the statute demands otherwise. *First Nat'l Bank v. Bernalillo County Valuation Protest Bd.,* 90 N.M. 110, 112, 560 P.2d 174, 176 (Ct. App.1977). By using the disjunctive, the legislature intended the Commission to investigate either the formation itself or the resulting effect. Consequently, Subsection (B) allows the Commission to either investigate the act of giving form or shape to the holding company or its resulting effect.

■ Finally, Subsection (E) of Section 62–6–19 contains a legislative mandate that the Commission "promulgate rules * * * to implement the provisions of Subsections B, C and D of this section, including the manner of conducting such investigations and making such determinations * * * as may be reasonably necessary and as are consistent with the provisions of this 1982 act."

In response, the Commission issued General Order 39 (Rules regarding Class I and Class II utilities transactions) in November 1982. General Order 39, Section 3.1(A) states that "No public utility may engage in a Class II transaction * * * without first obtaining written approval of a general diversification plan from the Commission."

Both parties have structured arguments based upon the events which have transpired since the promulgation of General Order 39. The Commission points to the failure of the legislature to express dissatisfaction with General Order 39 as indicative of legislative endorsement. PNM counters that unsuccessful amendments to Section 62–6–19, which would expressly authorize prior Commission approval of Class II transactions, demonstrates that the legislature does not interpret the statute to give the Commission the right of prior approval and that, therefore, General Order 39 is void because it is outside the scope of the statutory authority granted the Commission by Section 62–6–19. *See Rivas v. Board of Cosmetologists,* 101 N.M. 592, 594, 686 P.2d 934, 936 (1984).

In this instance, we construe no intent from legislative inaction. However, it is well settled that courts should accord deference to the interpretation given to a statute by the agency to which it is addressed. *Borrego v. United States,* 577 F.Supp. 408, 412 (D.N.M.1983). *See also Groendyke Transport, Inc. v. New Mexico State Corp. Comm'n,* 101 N.M. 470, 477, 684 P.2d 1135, 1142 (1984).

Furthermore, PNM's interpretation of Section 62–6–19 would strip the Commission of its ability to protect ratepayers from the adverse effects of the holding company restructuring until the impact has occurred. This Court must interpret statutes in a way which will not render their application unreasonable nor defeat the intended objective of the legislature. *State v. Garcia,* 93 N.M. 51, 53, 596 P.2d 264, 266 (1979). To ascertain the legislative intent we read the entire act as a whole, each part construed in connection with every other part. *General Motors Acceptance Corp.*

*v. Anaya,* 103 N.M. 72, 76, 703 P.2d 169, 173 (1985).

Read in light of the Public Utility Act's statutory framework, Section 62–6–19 gives the Commission the authority to promulgate General Order 39. The legislature gave the Commission the right to formulate the means reasonably necessary to investigate any Class II transaction. *See* § 62–6–19(E). Further, with certain exceptions not applicable here, Section 62–6–4(A) grants the Commission the exclusive power to supervise every public utility in respect to its rates and service regulations and to do all things *necessary and convenient* in the exercise of its power. In conformity with this legislative mandate, the Commission decided to require prior approval of any holding company restructuring. We find General Order 39 to be neither plainly erroneous nor inconsistent with the Act, *see Bokum Resources Corp. v. New Mexico Water Quality Control Comm'n,* 93 N.M. 546, 555, 603 P.2d 285, 294 (1979), and we defer to the Commission's determination that prior approval of Class II transactions is necessary to perform the Commission's investigatory task under Section 62–6–19. *See Groendyke Transport, Inc.,* 101 N.M. at 477, 684 P.2d at 1142.

■ Even if the Commission has the power of prior approval, PNM maintains that the Commission failed to follow General Order 39 and, consequently, PNM was denied due process. PNM argues that the Commission had no basis to disapprove the restructuring because PNM fully complied with the regulation. Further, PNM contends that the Commission based its disapproval on regulatory concerns not addressed in General Order 39.

Upon examination of the regulation, we cannot agree with PNM's allegations. Section 3.1(C) of General Order 39 provides in part: "The Commission shall approve the general diversification plan * * * if the Commission finds that such approval is in the public interest. Approval is in the public interest if the Commission finds * * * that it appears that the utility's ability to provide reasonable and proper utility service at fair, just and reasonable rates will

not be adversely affected by [the Class II transaction] * * *."

The Commission's disapproval of PNM's holding company was primarily based on its determination that the holding company structure would impair the Commission's ability to supervise PNM to ensure reasonable rates and services. Specifically, the holding company structure proposed by PNM would preclude the Commission's access to records of companies within the holding company with whom PNM would engage in business transactions.

Section 62–6–17 grants the Commission access to the books and records of an "affiliated interest" of a utility. An "affiliated interest" as defined by statute includes, among other entities, a subsidiary of a utility. § 62–3–3(A). As long as PNM's diversified activities would continue to be performed by entities that are subsidiaries of PNM, the Commission would continue to have access to information needed to ensure that no cross-subsidies are occurring between PNM and an affiliate. The danger of cross-subsidization has been given extensive analysis by this Court in *Gas Co. v. New Mexico Public Service Commission,* 100 N.M. 740, 676 P.2d 817 (1984).

PNM's restructuring would change the corporate relationship of the diversified entities to PNM. The restructuring would change the status of certain subsidiaries of PNM to a status which can be called "sisters" of PNM. A "sister" of a utility is a subsidiary of a holding company of which the utility also is a co-equal subsidiary. Under Section 62–3–3(A) the definition of an "affiliated interest" excludes a company which is in a "sister" relationship to the utility in the holding company structure. Therefore, the holding company structure proposed by PNM would prevent the Commission's access to the books and records of the "sister" necessary to ensure the reasonableness of transactions between that "sister" and PNM. Consequently, the Commission was unable to find that PNM's ability to provide reasonable and proper utility service at fair, just and reasonable rates would not be adversely and materially affected by the proposed restructuring.

This Court's role in reviewing orders of an administrative agency is to ensure that the order is neither arbitrary nor capricious, that the order is supported by substantial evidence, and that the order is within the agency's scope of authority. *See Elliott v. New Mexico Real Estate Comm'n,* 103 N.M. 273, 275, 705 P.2d 679, 681 (1985). Examination of both the applicable statutes and regulations, together with the record, reveals that the final order disapproving the restructuring fell within the scope of Section 62–6–19, followed the dictates of General Order 39, and was supported by substantial evidence. We affirm.

IT IS SO ORDERED.

SOSA, Senior J., and STOWERS, J., concur.