808 P.2d 606

**In the Matter of the Prudence of Costs Incurred by Public Service Company of New Mexico in Construction of Palo Verde Nuclear Generating Station.**

**ATTORNEY GENERAL OF the STATE OF NEW MEXICO, Appellant,**

v.

**NEW MEXICO PUBLIC SERVICE COMMISSION and Public Service Company of New Mexico, Appellees.**

No. 19046.

Supreme Court of New Mexico.

March 21, 1991.

Rehearing Denied April 11, 1991.

ratemaking discretion.

Tom Udall, Atty. Gen., Randall Childress, Deputy Atty. Gen. and Nann Houliston, Asst. Atty. Gen., Santa Fe, for appellant.

Lee W. Huffman and James C. Martin, Com'n Counsel, Santa Fe, for appellee New Mexico Public Service Com'n.

Keleher & McLeod, Richard B. Cole, Robert H. Clark, Albuquerque, O'Melveny & Myers, Carl R. Schenker, Jr., Phillip R. Kaplan, Robert M. Schwartz, Brian C. Anderson, and Kathleen D. Strong, Washington, D.C., for appellee Public Service Co. of New Mexico.

## OPINION

SOSA, Chief Justice.

In this "prudence case" we consider the second phase of a unified three-part process by which the New Mexico Public Service Commission (PSC or the Commission) considered the rate treatment of Public Service Company of New Mexico's (PNM's) 10.2% ownership interest in the Palo Verde Nuclear Generating Station (Palo Verde).

In the preceding excess capacity case,[1] we held that:

(1) PSC had jurisdiction to issue its final order both with respect to determination of alternatives to the inventory ratemaking methodology and to problems relating to phasing in of PNM's excess generating capacity;

(2) PSC's regulatory decision-making process was not pre-empted by federal law;

1. *In the Matter of the Adjudication of Alternatives to the Inventorying Ratemaking Methodology, and/or Plans for the Phasing in of Public Service Company of New Mexico's Excess Generating Capacity: Public Service Company of New Mexico and New Mexico Industrial Energy Consumers v. New Mexico Public Service Commission, and Public Service Company of New Mexico* (No. 18,381) and *In the Matter of the Adjudication of Alternatives to the Inventorying Ratemaking Methodology, and/or Plans for the Phasing in of Public Service Company of New Mexico's Excess Generating Capacity: Attorney General of the State of New Mexico v. New Mexico Public Service Commission, Public Service Company of New Mexico and Southwestern Public Service Company* (No. 18,415).

(3) PSC's exclusion of the M–S–R contract did not violate the Commerce Clause;

(4) PSC's consideration of the effects of various fuel mixes was not error;

(5) Various PSC findings on the merits affecting ultimate rates were not ripe for review;

(6) PSC acted reasonably in breaking the case into three parts and delaying any decisions on prudence until a decision on excess capacity was rendered;

(7) PSC's decision allowing inclusion of Palo Verde Units 1 and 2 but excluding Unit 3 and some 235 megawatts of coal-fired generating capacity from rate base (thereby excluding some $384 million of capital costs from PNM's rate base) was affirmed.

Having thus decided phase one of this tripartite case, we now consider phase two, the prudence case. The Attorney General (AG) appeals PSC's prudence order, 110 P.U.R. 4th 69 (NMPSC 1990), arguing that PSC wrongly terminated a hearing on the merits of the prudence case by considering and then approving a stipulation entered into between PSC staff (Staff) and PNM. This procedural argument is bolstered by the AG's contention that the prudence order is not based on substantial evidence. On appeal, we affirm PSC's prudence order in its entirety.

■ We consider first the AG's procedural objections to the order. Contrary to the AG's contentions, our reading of the record convinces us that when settlement negotiations began, and while they continued, the AG was given ample opportunity to participate but declined to do so. Even had he been excluded from settlement negotiations, however, the AG nonetheless was given opportunity to participate and did fully participate in the five weeks of hearings which PSC held on the issue of the stipulation's fairness to ratepayers and investors. *See generally Re Nine Mile Point 2 Nuclear Generating Facility*, 78 P.U.R. 4th 23, 46 (NYPSC 1986) (exclusion from "confidential" settlement negotiations does not invalidate final order where the

hearing process on the contested settlement afforded all parties due process).

The AG was afforded reasonable notice, an opportunity to be heard and to present his claims or defenses. More was not required. *See Jones v. New Mexico State Racing Commission*, 100 N.M. 434, 671 P.2d 1145 (1983). Here the AG had some four months to prepare for the hearing and filed numerous interrogatories along with testimony and exhibits of four witnesses. *Cf. New Mexico Industrial Energy Commission v. New Mexico Public Service Commission*, 104 N.M. 565, 568, 725 P.2d 244, 247 (1986) (no due process violation where NMIEC had less than one month to prepare for hearing on contested stipulation).

■ The core of the AG's due process attack is that Staff and PNM on their own improperly negotiated the settlement, thereby excluding the AG as a representative of residential ratepayers and depriving the AG and the ratepayers of due process. We disagree with the AG's argument that Staff may not enter into settlement negotiations with one or more utilities. The AG challenges Staff's capacity to negotiate as a "party." Yet, there is no dispute that Staff is not a party. The real question is whether Staff, under relevant statutes and PSC rules, has the capacity, however Staff is designated, to conduct settlement negotiations. We find that Staff does possess this capacity. This has been conceded even by one of the AG's own witnesses, who testified, "Staff obviously had the capacity in this case to enter into agreement with [PNM] * * * *"

NMSA 1978, Section 62–6–4(A) (Repl. Pamp.1984) gives PSC power "to do all things necessary and convenient in the exercise of its power and jurisdiction ... to regulate or supervise the rates or service of any utility * * * *" This broad authority includes the power to publish rules, NMSA 1978, § 62–6–1, and to employ staff. § 62–5–8. Under its rules, PSC has established that "parties to a proceeding and Staff may reach compromises and settle some or all issues." NMPSC Rule 110.-83(a). Further, stipulated settlements may

be formulated for the Commission's approval in which Staff plays an active role. NMPSC Rule 110.85(a).

PSC's rules and policies in this regard do not differ from the standard practice throughout the nation. *See e.g., City of Akron v. Public Utilities Commission*, 55 Ohio St.2d 155, 157–58, 378 N.E.2d 480, 483 (1978) (approving stipulation executed by Staff and one utility); *Re Nine Mile Point 2 Nuclear Generating Facility*, 78 P.U. R.4th at 25 (prudence review resolved by stipulation between utility owners and Staff); *National Fuel Gas Supply Corp. v. F.E.R.C.*, 811 F.2d 1563, 1571–72 n. 5 (D.C.Cir.1987), *cert. denied*, 484 U.S. 869, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987) (even if Staff is considered a "party" to settlement negotiations, the Commission itself does not thereby become improperly involved in negotiations). *See also Southern Union Gas Company v. New Mexico Public Service Commission*, 84 N.M. 330, 331, 503 P.2d 310, 311 (1972) (PSC given great flexibility by legislature to achieve its goals); *cf. Mountain States Telephone & Telegraph Company v. New Mexico State Corporation Commission*, 90 N.M. 325, 331, 563 P.2d 588, 594 (1977) (corporation commission "a prime mover" to see that public interest protected); *Halsted v. Dials*, 391 S.E.2d 385 (W.Va.1990) (if agency determines agreement is just and reasonable it may confirm the settlement without authorization of dissenting party).

The AG strenuously argues that this case is controlled by the holding in *Business and Professional People for the Public Interest (BPI) et al. v. The Illinois Commerce Commission et al.*, 136 Ill.2d 192, 144 Ill.Dec. 334, 555 N.E.2d 693 (1989). We disagree. The distinguishing feature of that case is that the Illinois Supreme Court found the Illinois Commerce Commission did not have statutory authority to enter two of the provisions of its Sixth Order. The court opined:

> Absent statutory law to the contrary, we have no quarrel with the Commission's ability to *consider* a settlement proposal not agreed to by all of the parties and the intervenors as a decision on the merits, as long as the provisions of such a

proposal are within the commission's power to impose, the provisions do not violate the [Illinois Public Utilities Act] and the provisions are independently supported by substantial evidence in the whole record. Such was not the situation in the case at bar.

Id. 144 Ill.Dec. at 345, 555 N.E.2d at 704.

One of the glaring errors in the Illinois Commission's order was its fixing of a five-year rate. The court held, "[W]e need not decide here whether or under what circumstances the Commission could set long-term rates because circumstances justifying the establishment of rates over a five-year period clearly do not exist in the case at bar." Id. 144 Ill.Dec. at 349, 555 N.E.2d at 708. In the present case, there is no contention raised that PSC lacked statutory authority to resolve the issues before it; the only issue asserted in this aspect of the appeal is the capacity of Staff to enter into settlement negotiations. Hence, the Illinois case is not supportive of the AG's argument. Further, as we will discuss below, in the case before us, we find that there *is* substantial evidence in the whole record to support PSC's prudence order.

Although Staff is technically not a party to settlement negotiations, we would completely blind ourselves to reality if we did not recognize that Staff functions in very much the same way as a bona fide party in almost all respects. This includes the hiring of witnesses and presentation of evidence, cross-examining witnesses for other parties, making arguments on both the law and the facts, and otherwise behaving in the same way that a party does. Yet, in none of its activities is Staff subject to direction by the commission; Staff is instead an autonomous participant making presentations to the Commission and eliciting rulings from it. We see no reason to treat a stipulation between Staff and PNM (or any other party) on the outcome of the case any differently than a stipulation as to any other matter in the course of the proceedings, or any differently than a stipulation between two ordinary parties.

In many cases, the only party before the Commission is the applicant, or, if the Commission has initiated the proceeding, the respondent. To say that Staff cannot enter into a stipulation with the party is to rule out stipulations in all such single party cases. Consider what would happen in cases where the Commission initiated the proceeding: Staff, which would act as the prosecutor or initiator of the case, would have no ability to stipulate with the respondent, and the case would have to proceed through a hearing, even though there might not be any contested issues. We cannot imagine that the legislature would have intended such a costly, time-consuming result.

Be that as it may, this case is in essence controlled by our holding in *New Mexico Industrial Energy Commission v. New Mexico Public Service Commission,* 104 N.M. 565, 725 P.2d 244 (1986) (Commission adopted a contested stipulation) wherein we recognized that a cooperative approach in reconciling the interests of the parties was consistent with the public policy favoring settlement of disputes. That policy is especially pertinent here, where the Commission in effect initiated the proceeding (inquiring into the prudence of PNM's Palo Verde expenditures) and its "prosecutorial arm," Staff, entered into a stipulation with the target of the inquiry, PNM, by making a stipulation to the outcome.

We note that both the AG and PSC rely on *Mobil Oil Corporation v. Federal Power Commission,* 417 U.S. 283, 312–14, 94 S.Ct. 2328, 2347–49, 41 L.Ed.2d 72 (1974), for support. In that case, the Court in reviewing the Federal Power Commission's adoption of a contested stipulation made it clear that a stipulation which is not joined by all parties is not binding as to a non-settling party, that is, the non-settling party must still be afforded the opportunity to present its views on the merits to the Commission. However, "even if there is a lack of unanimity [in the stipulation], it may be adopted as a resolution *on the merits,* if [the Commission] makes an independent finding supported by 'substantial evidence on the record as a whole' that the proposal will" resolve the subject of the proceeding

in a way that is just and reasonable. *Id.* at 314, 94 S.Ct. at 2348 (quoting *Placid Oil Co. v. FPC,* 483 F.2d 880, 893 (5th Cir.1973) (emphasis in original).

By the holding in *Mobil Oil,* PSC can adopt a contested stipulation by, first, affording any non-stipulating party an opportunity to be heard on the merits of the stipulation (i.e., whether it is a fair and reasonable resolution of the controversy before the Commission) and second, making an independent finding, supported by substantial evidence in the record, that the stipulation does indeed resolve the matters in dispute in a way that is fair, just and reasonable and in the public interest.

In the present case, PSC satisfied both of these requirements. First, it afforded the AG ample opportunity to present his views on the merits of the stipulation and on the merits of the underlying controversy. The AG himself, prior to the hearing, took the position that the issues to be decided in the hearing were whether adoption of the stipulation would be a fair, just and reasonable resolution of the prudence issues surrounding Palo Verde and would be consistent with the public interest, and whether Staff and PNM as proponents of the stipulation had met their burden of proof on these issues.

PSC's final order summarizes the voluminous discovery that preceded the hearing and the enormity of the hearing process itself, including the length of time, large number of witnesses, etc. During oral argument, it was pointed out that the AG's four volumes of testimony on the issue of approval of the stipulation were the same as what his testimony would have been on the underlying issue of PNM's prudence in investing in Palo Verde. Therefore, we conclude that the AG, as a nonstipulating party, had precisely the same opportunity to present his position on the "merits" of the controversy—PNM's prudence in investing in Palo Verde—by attacking the stipulation as he would have had if no stipulation had ever been entered into between PNM and Staff.

On the second requirement imposed by *Mobil Oil,* PSC's final order speaks for itself; it *does* contain the requisite "independent finding" that the stipulation is a fair, just and reasonable resolution of the prudence issues relating to PNM's investment in Palo Verde and is consistent with the public interest. This finding is supported by the substantial evidence of the witnesses who testified on behalf of PNM and Staff, and the Commission's finding that PNM and Staff met their burden of proof appears to be well supported and within the bounds of universally accepted standards defining "substantial evidence on the whole record."

We note that the AG does not ask us to find or conclude that PNM was imprudent, but merely to find that the evidence warrants setting aside the stipulation and holding public hearings on the prudence issues. From the discussion above, it is obvious that we disagree with the AG's assertions as to the lack of evidence and his call for public hearings. It is equally obvious from the above discussion why we need not reach the AG's collateral argument to the effect that he has standing to represent residential ratepayers but was denied such standing by the stipulated settlement process and entry of final order.

Whether the AG does or does not have standing to represent residential ratepayers makes no difference, because we have concluded that he received all the process to which he was due in advancing his case before the Commission and failed to win his case. Had he stood before the Commission as representative of ratepayers rather than as representative of the State of New Mexico, the result would be the same.

■ Nonetheless, because of the magnitude of this case and its enormous impact on the lives of the citizens of this state, we would feel remiss if we did not add a few words on why we agree that PSC's final order does in fact promote and serve the public good and why in fact PSC did arrive at this final order properly, openly and fairly.

This prudence case must be understood in the context of the unified relationship which exists between our holding in the excess capacity case and PSC's unappealed decision in the rate case (NMPSC Case No. 2262). Although the three cases have been segmented for more judicious handling, in reality the three aspects of the case—excess capacity, prudence, rate-setting—lie on a continuum of similarity that binds the disparate elements together into a whole. When looking at the parts in the context of the whole, the following picture emerges.

The overall case involves a determination of rate treatment for PNM's 390 megawatt interest in Palo Verde, consisting of 130 megawatts each in three separate nuclear power generating units. In PSC's excess capacity order, which we have now affirmed,[2] PSC included Units 1 and 2 in PNM's next rate case (2262), but excluded from future rates Unit 3 and 235 megawatts of coal-fired generating capacity. This decision excluded $384 million from PNM's rate base. In its prudence decision (the case at bar), PSC further disallowed $90 million from PNM's rate base and imposed stringent performance standards on Palo Verde operations. After reviewing all of the work, evidence, testimony and thinking that had gone into the excess capacity case and the prudence case, PSC in Case 2262 came to the conclusion that PNM's rates should be *decreased* by $2.9 million. Neither the AG, nor anyone else, appealed this ratepayer-favorable decision.

We have no difficulty in taking judicial notice of the unappealed decision in Case 2262. *See Illinois Bell Telephone Company v. Illinois Commerce Commission,* 55 Ill.2d 461, 468, 303 N.E.2d 364, 368 (1973) (court may take judicial notice of commission actions subsequent to one under review); *Holquin v. Elephant Butte Irrigation District,* 91 N.M. 398, 402, 575 P.2d 88, 92 (1977) (judicial notice of agency rules and regulations); *Miller v. Smith,* 59 N.M. 235, 239–40, 282 P.2d 715, 718–19 (1955) (judicial notice of "closely interwoven" causes).

**2.** *See supra* p. 607 n. 1.

In the case at bar, PSC was charged with the responsibility of excluding imprudent expenditures from PNM's rate base. We find that PSC succeeded. Even if this were not the case, however, our duty on review of a commission order is not dependent on whether PSC succeeded in excluding imprudent expenditures, but on whether PSC acted capriciously, whether its decision was supported by substantial evidence and whether its determination was within the scope of its authority. *Attorney General v. New Mexico Public Service Commission,* 101 N.M. 549, 553, 685 P.2d 957, 961 (1984). We must view PSC's decision in the light most favorable to upholding that decision, *New Mexico Human Services Department v. Garcia,* 94 N.M. 175, 608 P.2d 151 (1980), and we must take into account the considerable discretion with which PSC is endowed in determining the justness and reasonableness of utility rates. *Hobbs Gas Company v. New Mexico Public Service Commission,* 94 N.M. 731, 616 P.2d 1116 (1980). Finally, we must give PSC's decision great deference, owing to the Commission's expertise in this highly technical area. *See Viking Petroleum, Inc. v. Oil Conservation Commission,* 100 N.M. 451, 453, 672 P.2d 280, 282 (1983).

Taking the above into account, one cannot remain unimpressed with the "end result" of PSC's determination in this tripartite case, or remain unconvinced that the public interest has indeed been served and the needs of both investors and ratepayers have indeed been dutifully promoted by PSC. *See Federal Power Commission v. Hope Natural Gas Company,* 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1944) ("total effect of the rate order" being not unreasonable, judicial inquiry ends and method employed to reach rates unimportant); *Duquesne Light Company v. Barasch,* 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989) (challenge to successive phases of rate-setting process failed to show how ultimate rates were unjust). Not only has the AG not contested the ultimate rate set in this tripartite case, he has failed even in the prudence case to challenge the $90 million disallowance or

the performance standards imposed by PSC. This tacit concession on the AG's part that the end result is just and fair illustrates, we think, the virtue and worth of the PSC final order on prudence.

Accordingly, we hold that the AG's challenge to the Commission's final order fails both in its procedural and in its substantive aspects.

For the foregoing reasons the final order of the Public Service Commission is affirmed.

MONTGOMERY and FRANCHINI, JJ., concur.