858 P.2d 1263

In the Matter of Staff's Motion for an Order to Show Cause to be Issued to Cerrillos Water and Irrigation Company, Inc., and El Vadito de los Cerrillos Water Association.

**EL VADITO DE LOS CERRILLOS WATER ASSOCIATION,**
Petitioner,

v.

**NEW MEXICO PUBLIC SERVICE COMMISSION, Respondent.**

Nos. 19596, 19835.

Supreme Court of New Mexico.

Aug. 10, 1993.

Montgomery & Andrews, John B. Draper, Galen M. Buller, Rod D. Baker, Santa Fe, for petitioner.

Lee Huffman, Com'n Counsel, Santa Fe, for respondent.

## OPINION

BACA, Justice.

Appellant, El Vadito de los Cerrillos Water Association ("El Vadito"), appeals two final orders issued by the New Mexico Public Service Commission ("Commission"). Both Commission orders pertained to an application for abandonment and transfer that was filed with the Commission by the Cerrillos Water and Irrigation Company ("CWIC"), a public utility which sought to abandon water service to its customers and transfer its water supply facilities to El Vadito. We address the following issues on consolidated appeal: (1) Whether the Commission exceeded the scope of its authority by requiring El Vadito to offer memberships to all former water hauler customers of CWIC as a condition to approving CWIC's application for abandonment and transfer; (2) whether El Vadito was transformed into a public utility when it sold water to water haulers who were not members of its association; and (3) whether the New Mexico Sanitary Projects Act, NMSA 1978, Sections 3–29–1 to –19 (Repl.Pamp.1991) ("SPA"), requires El Vadito to offer membership in its association to non-member water haulers who reside in the rural areas surrounding Cerrillos. We note jurisdiction under NMSA 1978, Section 62–11–1 (Repl.Pamp.1984), and vacate both Commission orders.

### I

For nearly a century, CWIC, a public utility regulated by the Commission, sup-

plied water to the rural New Mexican village of Cerrillos and was the sole source of water for residents living in Cerrillos and surrounding rural areas. By 1990, CWIC served seventy-seven customers via a water pipeline and provided service to approximately sixty customers without access to CWIC's pipeline ("water haulers"), who physically hauled water from CWIC's valve house to their residences.

Due to a perennial shortage of maintenance funds, CWIC's water supply system gradually fell into a state of disrepair and eventually ceased to supply water in an effective manner. El Vadito, a non-profit corporation organized pursuant to the SPA, entered into an agreement with CWIC to purchase CWIC's existing water supply facilities. El Vadito planned to utilize SPA funds and loan money obtained under the Rural Infrastructure Act, NMSA 1978, sections 75–1–1 to –6 (Repl.Pamp.1988), to upgrade and replace CWIC's existing water supply system. El Vadito then intended to assume CWIC's responsibility for supplying water to the community of Cerrillos.

On February 1, 1990, CWIC filed an application with the Commission, requesting permission to abandon water service to its customers and transfer its water supply facilities to El Vadito. A hearing on CWIC's application, docketed as Case No. 2313, was held before the Commission in June of 1990, with El Vadito and seventeen water haulers intervening. Evidence adduced during the hearing established that El Vadito's newly constructed pipeline would serve CWIC's existing pipeline customers and fifteen of CWIC's former water hauler customers. These customers had previously been granted membership in El Vadito. Several of the remaining 45 water hauler customers not served by El Vadito's pipeline applied for and were denied membership in El Vadito.

Toward the conclusion of the three-day hearing, counsel for CWIC suggested to the Commission's Hearing Examiner that the Commission promulgate an interim order permitting CWIC to immediately transfer its water supply facilities to El Vadito, subject to reversal in the event that the Commission denied CWIC's application. In response, the Commission's Hearing Examiner questioned the practicality and necessity of obtaining an interim order and instead suggested that CWIC simply transfer its facilities to El Vadito, subject to later Commission approval.

Following the hearing and prior to issuance of the Commission's final order in Case No. 2313, CWIC abandoned service to its customers and transferred its water system to El Vadito. El Vadito began operating and upgrading CWIC's water supply system and began selling water to its members and to non-member water haulers pending the Commission's final decision on CWIC's application.

The Commission issued its final order in Case No. 2313 on October 1, 1990. The Commission, concerned that denial of membership in El Vadito would leave non-member water haulers without legally enforceable rights to an adequate water supply, conditioned approval of CWIC's application on whether El Vadito agreed to offer membership in its association to all water haulers currently excluded under El Vadito's plan. The Commission's order also required CWIC to assist El Vadito by notifying former water hauler customers of their opportunity to obtain membership in El Vadito.

Neither El Vadito nor CWIC complied with the requirements of the Commission order in Case No. 2313. CWIC declined to notify its former water hauler customers of their opportunity to join El Vadito. El Vadito continued selling water to non-member water haulers, but refused to allow them membership in its organization.

On November 27, 1990, Commission staff members filed a motion for an Order to Show Cause why CWIC and El Vadito were not in violation of the Final Order issued in Case No. 2313 for executing the abandonment and transfer agreement without first

complying with the conditions mandated by the Commission's order. In response to the staff's motion, the Commission instituted Case No. 2365 and issued a final order finding CWIC and El Vadito in violation of the final order issued in Case No. 2313. The Commission found that El Vadito had been transformed into a public utility by selling water to persons outside its membership. The Commission required El Vadito to file for a Certificate of Public Convenience and Necessity in order to continue operating the CWIC water supply system. El Vadito appeals both final orders. The two cases were consolidated for appeal to this Court.

## II

The first issue that we address is whether the Commission exceeded the scope of its authority by requiring El Vadito to offer approximately forty-five water haulers membership in its association as a condition to granting CWIC's application. The answer to this question depends upon whether El Vadito, an SPA association, was subject to the Commission's jurisdiction. The issue of whether the Commission has jurisdiction over SPA associations has not previously been addressed by this Court.

When reviewing Commission orders, this Court must ensure that the order is supported by substantial evidence, is neither arbitrary nor capricious, and is within the Commission's scope of authority. *See Public Serv. Co. of N.M. v. New Mexico Pub. Serv. Comm'n,* 106 N.M. 622, 626, 747 P.2d 917, 921 (1987). Commission decisions requiring expertise in highly technical areas, such as utility rate determinations, are accorded considerable deference. *See Attorney Gen. v. New Mexico Pub. Serv.*

*Comm'n,* 111 N.M. 636, 642, 808 P.2d 606, 612 (1991). Less deference, however, is warranted when reviewing determinations outside the realm of the Commission's expertise. *See Mitzelfelt v. Department of Air Force,* 903 F.2d 1293, 1296 (10th Cir. 1990). The question of whether the Commission has jurisdiction over the parties or subject matter in a given case is a question of law outside the scope of the Commission's expertise and reviewable by the courts with little deference accorded to the Commission's own jurisdictional determination.[1] *Homer Elec. Ass'n v. City of Kenai,* 816 P.2d 182, 184–85 (Alaska 1991).

The Commission is an administrative body created by statute and obtains authority and jurisdiction expressly or by necessary implication from the statute creating it. *New Mexico Elec. Serv. Co. v. New Mexico Pub. Serv. Comm'n,* 81 N.M. 683, 684, 472 P.2d 648, 649 (1970). The Commission was created by and derives its jurisdiction from the New Mexico Public Utility Act, NMSA 1978, Sections 62–1–1 to –14–8 (Repl.Pamp.1984 & Cum.Supp.1989) ("PUA"). The PUA gives the Commission regulatory jurisdiction over public utilities, *see* § 62–6–4(A) (Repl.Pamp.1984) ("[t]he commission shall have general and exclusive power and jurisdiction to regulate and supervise every public utility...."), and grants the Commission control over various operational activities of public utilities, such as those pertaining to CWIC in the instant case. *See* § 62–9–5 (Repl.Pamp. 1984) (requiring Commission approval before a utility can abandon all or part of its facilities); § 62–6–12(A)(4) (requiring the Commission's express authorization before a public utility can "sell, lease, rent, purchase or acquire any public utility plant or property...."). No provision of the PUA,

1. The Commission always has the first opportunity to define its jurisdiction. Through its action or inaction, the Commission ascertains whether the subject matter and parties are or are not within the purview of its statutory power. *See People ex rel. Thompson v. Property Tax Appeal Bd.,* 22 Ill.App.3d 316, 317 N.E.2d 121, 125 (Ill.App.Ct.1974), *cert. denied,* 422 U.S. 1002,

95 S.Ct. 2623, 45 L.Ed.2d 666 (1975), *and reh'g denied,* 423 U.S. 885, 96 S.Ct. 161, 46 L.Ed.2d 117 (1975). The Commission, however, is not the final arbiter of its statutorily conferred jurisdiction, and the propriety of the Commission's initial determination is always a question appropriate for judicial review. *See id.*

however, expressly grants the Commission jurisdiction over SPA associations.

Because the PUA does not explicitly grant the Commission jurisdiction over SPA associations, we must determine whether such jurisdiction arises by necessary implication. We note that the Commission's jurisdiction under the PUA extends no further than regulating those entities that function and operate as public utilities. See § 62–6–4(A). The PUA neither affirmatively brings all SPA associations within the scope of the Commission's jurisdiction by including such associations in the definition of "public utility," as was done with rural electric cooperatives, see § 62–3–3(E) & (G) (Cum.Supp.1989) (including rural electric cooperatives in the definition of "public utility"); § 62–3–2(A)(1) (Cum.Supp.1989) (stating that the Commission must regulate electric service furnished by rural electric cooperatives "in order to effectuate the purposes of both the Rural Electric Cooperative Act, [NMSA 1978, Sections 62–15–1 to –33 (Repl.Pamp. 1984 & Cum.Supp.1992)] ... and the [PUA]...."), nor deliberately exempts SPA associations, as a class, from Commission jurisdiction, as in the case of utilities solely owned and operated by municipalities. See § 62–3–3(E) (stating that absent voluntary election to come within the provisions of the PUA under NMSA 1978 Section 62–6–5 (Repl.Pamp.1984), municipalities are excluded from the operation of the PUA); NMSA 1978, § 62–6–4(A) (pronouncing that while the Commission has regulatory and supervisory jurisdiction over public utilities, it lacks the power and jurisdiction to regulate or supervise utilities owned and operated by municipal corporations).

■ The PUA's silence as to whether the Commission has jurisdiction over SPA associations, by itself, proves to be inconclusive on the issue of whether the Commission has jurisdiction by necessary implication over SPA associations. See Leyba v. Renger, 114 N.M. 686, 688, 845 P.2d 780, 782

(1992) (declaring that legislative silence, by itself, does not express legislative intent); Torrance County Mental Health Program, Inc. v. New Mexico Health & Env't Dep't, 113 N.M. 593, 598, 830 P.2d 145, 150 (1992) (holding that a statute's silence on whether punitive damages are recoverable from a governmental entity indicates no intent one way or the other on whether the legislature intended to waive sovereign immunity for punitive damages in contract actions against a governmental entity). The legislature, however, was not silent as to administrative oversight of SPA associations. The SPA grants control of SPA associations to the New Mexico Environmental Improvement Division of the Health and Environment Department ("NMEID") and provides a comprehensive legislative scheme under which NMEID supervises local SPA associations as these associations develop water facilities and sewage works in rural communities otherwise lacking adequate domestic water supplies. See §§ 3–29–1 to –19. The absence of any provision in the PUA bringing SPA associations within the Commission's jurisdiction by including these associations in the definition of "public utility," combined with NMEID's extensive oversight and control of SPA associations under the SPA, leads us to conclude that the legislature intended SPA associations to be free from the Commission's extensive regulatory oversight when carrying out the purpose of the SPA by providing basic water service to rural unincorporated communities.

■ Furthermore, the fact that the SPA grants NMEID extensive oversight and control of SPA associations alone warrants the conclusion that the Commission does not have general jurisdiction over SPA associations. Under Section 62–6–4(A) of the PUA, the Commission has exclusive power and jurisdiction to regulate and supervise public utilities. Consequently, any determination that SPA associations are under the general jurisdiction of the Commission— i.e., that SPA associations generally operate as public utilities, see § 62–6–4(A) (granting, and by implication, confining the Commission's jurisdiction to the supervi-

sion and regulation of public utilities)—would lead to an irreconcilable conflict between those provisions of the SPA granting extensive control over SPA associations to NMEID and the Commission's exclusive jurisdiction to regulate and supervise public utilities found in Section 62–6–4(A) of the PUA. We assume that the legislature was aware of the Commission's exclusive jurisdiction over public utilities, conferred by 1941 N.M. Laws, ch. 84, § 17, and had no intention of creating a conflict with this provision of the PUA when it later granted NMEID extensive control over SPA associations by enacting the SPA in 1965 N.M. Laws, ch. 300. *See Clothier v. Lopez*, 103 N.M. 593, 595, 711 P.2d 870, 872 (1985) (recognizing the presumption that the legislature is aware of existing law when it passes subsequent legislation and concluding that two acts which appear to be contradictory should be interpreted, when possible, to give effect to both). Based upon these foregoing reasons, we hold that Commission jurisdiction over SPA associations does not arise by necessary implication.[2]

SPA associations, however, are not exempt from the Commission's regulatory jurisdiction in every case. An SPA association operating as a public utility would be subject to the Commission's exclusive regulatory jurisdiction, as any other public utility would be. *See* § 62–6–4(A). In the instant case, examination of the Commission's final order in Case No. 2313 reveals that it made no determination that El Vadito was operating as a public utility. Instead, the Commission agreed with the Hearing Examiner's conclusion that El Vadito would not be transformed into a public utility and would remain outside Commission regulatory jurisdiction when operating CWIC's former water facilities, but qualified this conclusion by stating that El Vadito would remain free of Commission oversight only if it restricted water service to its members. The Commission expressed concern in its final order that the already-completed transfer of CWIC's water supply facilities to El Vadito—a conditional transfer suggested by CWIC's counsel and consented to by the Hearing Examiner—was not in the best interests of the Cerrillos community if El Vadito failed to extend membership in its association to all non-member water haulers. It is within this factual context that the Commission promulgated its order requiring El Vadito to extend membership in its association to the remaining non-member water haulers as a condition to approving CWIC's application for abandonment and transfer.

While the Commission clearly had the power to grant or deny CWIC's abandonment and transfer application, it did not have the power to dictate El Vadito's membership as a condition to approving CWIC's application. El Vadito was an SPA association not found to be operating as a public utility and thus, was not within the realm of the Commission's statutorily-conferred jurisdiction. Once the Commission determined that CWIC's application for abandonment and transfer was not in the public interest and that the only cure for the application's defects rested with El Vadito, a party outside the scope of Commission jurisdiction, all that the Commission lawfully could have done was to deny CWIC's application.[3] The Commission, lacking the

---

2. A system of concurrent jurisdiction over SPA associations by NMEID and the Commission is impractical for the same reason. Concurrent jurisdiction would create the same irreconcilable conflict between NMEID's statutorily-conferred oversight of SPA associations and the Commission's exclusive control over the entities under its jurisdiction.

3. The final order in case No. 2313 stated that CWIC's application should be denied if certain conditions for approval were not met and if the Commission finds "that there has not been a sufficient showing made that the continuation of service is assured or that the present and future public convenience and necessity do not otherwise require the continuation of service." However, examination of the Commission's final orders in Case No. 2313 and Case No. 2365 discloses that the Commission never denied CWIC's application for abandonment and transfer. Instead, the final order in Case No. 2365 declared El Vadito to be a public utility and ordered that El Vadito apply for a certificate of

statutory mandate to assert jurisdiction over El Vadito, acted beyond the scope of its authority by attempting to dictate El Vadito's membership. We hold that the Commission was without jurisdiction to require that El Vadito offer memberships in its association to non-member water haulers as a condition to granting CWIC's application and vacate the Commission's final order in Case No. 2313.

### III

■ We next review the Commission's determination that El Vadito was transformed into a public utility by selling water to certain non-member water haulers. The Commission instituted Case No. 2365 after El Vadito and CWIC refused to comply with the order promulgated in Case No. 2313. In its final order in Case No. 2365, the Commission found El Vadito to be operating as a public utility, decided that El Vadito was subject to the Commission's regulatory jurisdiction, and held that El Vadito would be required to obtain a certification of public convenience and necessity to operate the water system purchased from CWIC. *See* NMSA 1978, § 62–9–1 (Repl.Pamp.1984). El Vadito bears the burden on appeal of demonstrating that the order appealed from is unreasonable or unlawful. NMSA 1978, § 62–11–4 (Repl.Pamp.1984).

Whether El Vadito became a public utility by selling water to non-member water haulers depends upon whether providing water to the water haulers constituted furnishing water service *to the public*, within the meaning of the Public Utility Act. Section 62–3–3(G) (defines "public utility" as every person operating, owning, leasing or controlling plants, properties or facilities furnishing water "to or for the public"); § 62–3–1(A) (Repl.Pamp.1984) (public utilities are affected with the public interest in

that, among other things, they render "essential public services to a large number of the general public").

Several of our previous opinions have considered whether certain entities operated as public utilities within the meaning of the PUA when providing utility service to individuals or groups of individuals within the general population. *See Griffith v. New Mexico Pub. Serv. Comm'n,* 86 N.M. 113, 520 P.2d 269 (1974) (holding that a subdivision developer who ran water pipes from his privately-owned spring to each lot in the subdivision and charged lot owners for water service was a public utility within the meaning of the PUA); *Llano, Inc. v. Southern Union Gas Co.,* 75 N.M. 7, 399 P.2d 646 (1964) (upholding trial court decision to vacate a Commission order finding that a corporation buying and reselling gas to a single industrial customer was a public utility subject to Commission jurisdiction); *Socorro Elec. Coop. v. New Mexico Pub. Serv. Co.,* 66 N.M. 343, 348 P.2d 88 (1959) (holding that a rural electric cooperative that distributed electricity to member consumers and "certain others" in several New Mexico counties was not a public utility as contemplated by the PUA).

These cases define a public utility as an individual or entity that holds itself out " 'expressly or impliedly, as engaged in the business of supplying [its] product or service to the public, as a class, or to any limited portion of it, as contradistinguished from holding [itself] out as serving or ready to serve only particular individuals.' " *Llano, Inc.,* 75 N.M. at 17, 399 P.2d at 653 (quoting 73 C.J.S. *Public Utilities* § 2 p. 992 (1951)). In *Llano,* we noted that the principle determinative feature of a public utility " 'is that of service to or readiness to serve, an indefinite public (or portion of the public as such) which has a legal right to demand and receive its servic-

---

public convenience and necessity after El Vadito and CWIC failed to fulfill the conditions necessary to obtain Commission approval of CWIC's application in Case No. 2313. Had the Commission simply denied CWIC's application,

CWIC would have been required to resume operation of the water facilities until CWIC and El Vadito could have developed terms for abandonment and transfer that were acceptable to the Commission.

es or commodities.' " *Id.* at 18, 399 P.2d at 653 (quoting 43 Am.Jur. *Public Utilities and Services* § 2 p. 571, (1942)). Thus, public utilities are clearly characterized by an interest in serving the public at large, *see West Valley Land Co. v. Nob Hill Water Ass'n*, 107 Wash.2d 359, 729 P.2d 42, 46 (1986), or a willingness to extend service to an indefinite public, without restricting service to privileged individuals. *Socorro Elec. Coop.*, 66 N.M. at 348, 348 P.2d at 91 (quoting *Thayer v. California Dev. Bd.*, 164 Cal. 117, 128 P. 21, 25 (1912)).

In the instant case, El Vadito sold water to approximately forty-five non-member water haulers in addition to providing water service to its 108 members. El Vadito's sale of water to its pipeline membership and to a small group of non-member water haulers fails to manifest a readiness to serve an indefinite public. Consequently, we hold that El Vadito was not transformed into a public utility by selling water to a limited number of non-member water haulers and is not subject to the Commission's regulatory jurisdiction. At the present time, El Vadito may continue to operate its water system without obtaining a certificate of public convenience and necessity from the Commission. We find the Commission's determination that El Vadito was operating as a public utility to be unreasonable under the facts of this case and vacate the Commission's order in Case No. 2365.[4]

## IV

Finally, we note that El Vadito evoked the jurisdiction of this Court to determine whether it, as an SPA association, was outside the scope of the Commission's regulatory jurisdiction. Having held that El Vadito is free from Commission jurisdiction, we consider it necessary to address the issue of whether non-member water haulers have a right to membership in El Vadito under the SPA. El Vadito is under no obligation to serve non-members because of its status as a non-profit association organized pursuant to the SPA. Thus, non-member water haulers who are hauling water from El Vadito's valve house currently have no legally enforceable right to access the community's sole source of water if El Vadito decides to discontinue service to these water haulers in the future.

The purpose of the SPA is to improve the public health of the people of New Mexico by establishing sanitary domestic water facilities to supply water to rural unincorporated communities, which otherwise would likely have no means to procure usable water. *See* § 3–29–3. The SPA, in apparent recognition of an SPA association's obligation to provide for its community, requires that all persons within a given community be granted equal opportunity to become members of any new or existing association. *See* § 3–29–11; N.M. Att'y Gen. Op. 61–44 (1961). Because this provision limits the right to membership in a given SPA association to "persons within the community" served by the association, the question presented in the instant case is whether water haulers living in the rural areas surrounding Cerrillos are persons within the community of Cerrillos, such that they have a right to membership in El Vadito under the SPA.

The SPA in relevant part defines "community" as "any rural unincorporated community." Section 3–29–2(A). This definition provides little help in answering the question presented and instead requires a determination of what constitutes the rural unincorporated community of Cerrillos. The words used in a statute should be given their common, everyday meaning. *State ex rel. Reynolds v. Aamodt*, 111 N.M. 4, 5, 800 P.2d 1061, 1062 (1990). The term "community" has traditionally meant a group of people residing "in a locality in more or less proximity," bound together by

4. We hold only that El Vadito is not operating as a public utility at this point in time. Should El Vadito begin to sell water to a proportionately larger number of non-members or to substantial numbers of water users outside the Cerrillos community, it might well be transformed into a public utility in the future. *See Llano, Inc.*, 75 N.M. at 18, 399 P.2d at 654.

"common rights, privileges, or interests." *Black's Law Dictionary* 254 (5th ed. 1979). The word "rural" connotes country as opposed to urban living. *See id.* at 1197. Thus, the rural unincorporated community of Cerrillos is comprised of those people who share common rights, privileges, or interests, and live in reasonable proximity to one another within Cerrillos and the agrarian areas surrounding Cerrillos.

While a rural community is by its very nature not amenable to easily defined boundaries, the circumstances of this case mandate that proximity and dependency shape and define the community of Cerrillos water users. Water haulers living in the Cerrillos area are as much a part of the community as residents served by El Vadito's pipeline because both groups live in reasonable proximity to one another and are bound together by the common important interest in maintaining access to the area's sole source of water. Thus, water haulers who reside in the rural areas surrounding Cerrillos and depend exclusively upon the El Vadito water system for water have a right under the SPA to become members of El Vadito.[5] As members of the Cerrillos community, these water haulers must be afforded the opportunity to become members of El Vadito under the same membership criteria as that applied to members served by El Vadito's pipeline. Membership in El Vadito will ensure that these water haulers will have legally enforceable rights to access the community's sole source of water in the future.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.

RANSOM, C.J., dissents.

RANSOM, Chief Justice (dissenting).

I respectfully dissent. In Case 2313, approval of a public utility's transfer of facilities was conditioned upon the transferee's offer of membership in its association to all water haulers who may require service. The propriety of the Commission's conditional approval is not in question. In Case 2365, the Commission found that El Vadito is a public utility which is required to have a certificate of public convenience and necessity in order to continue operating a former public utility's water supply system.

Whether El Vadito is operating as a public utility is a question of fact, not one of law. The majority opinion acknowledges the obvious: "An SPA association operating as a public utility would be subject to the Commission's exclusive regulatory jurisdiction, as any other public utility would be." As to whether the facts demonstrate that El Vadito is operating as a public utility, I would accord the decision of the Commission considerable deference because of its expertise. I deem the majority's exercise in statutory interpretation to be largely irrelevant in deciding whether the Commission acted arbitrarily or capriciously in finding El Vadito to be a public utility.

To digress, if I were to address the statutory questions discussed in the majority opinion, I believe I would find installation of sanitary domestic water facilities to be compatible with regulation by the Environmental Improvement Division concurrently with regulation of public convenience and necessity (and rates) by the Commission. I see no "irreconcilable conflicts." The purpose of the SPA is to improve the public health of New Mexicans through a program that provides for installation of sanitary domestic water facilities. NMSA 1978, § 3–29–3 (Repl.Pamp.1991). The SPA does not address service, rates, or the transfer of facilities by an existing public entity. That is the responsibility of the Commission. By its current specific ex-

---

**5.** It necessarily follows from our definition of the Cerrillos community that water haulers who have access to alternative sources of water or live considerable distances from the vicinity of Cerrillos are not members of the Cerrillos community and thus do not have a mandatory right to membership in El Vadito.

emptions regarding municipalities and tenants or employees of a system owner, the legislature has shown that it knows how specifically to exempt certain types of associations from regulation by the Commission. Prior to 1967, rural electric cooperatives were expressly excepted by statute from regulation by the Commission, but those statutes were repealed by the enactment of Section 62–3–2. The repeal of that exemption further indicates the legislature's intent to make essential utility services (other than those specifically exempted) subject to Commission regulation.

The majority correctly states that: "Whether El Vadito became a public utility by selling water to non-member water haulers depends upon whether providing water to the water haulers constituted furnishing water service *to the public,* within the meaning of the Public Utility Act." The majority defines a public utility as a business engaged in service to the public as distinguished from service to particular individuals; it holds that El Vadito is not a public utility because its "sale of water to its pipeline membership and to a small group of non-member water haulers fails to manifest a readiness to serve an indefinite public." However, the opinion notes that "El Vadito ... intended to assume CWIC's responsibility for supplying water *to the community.*" (Emphasis added.) The opinion concludes with the acknowledgement that water haulers who are members of the Cerrillos community "must be afforded the opportunity to become members of El Vadito under the same membership criteria as that applied to members served by El Vadito's pipeline." Apparently, no member of the public requiring service is to be excluded. A duty to serve water haulers who reside in the rural areas surrounding Cerrillos and who depend exclusively upon the El Vadito water system evinces that El Vadito is a corporation which supplies service to the public as distinguished from particular individuals.

I am inclined to believe that the definition of a public utility as adopted in the circulating opinion is not sufficiently precise. I would prefer the language from *Griffith*: "[I]n order to preserve the public welfare, any person not engaged solely in interstate business, who operates a facility which supplies water to the public for domestic use, is a public utility unless he supplies water only to himself, his tenants, or his employees." *Griffith v. New Mexico Public Serv. Comm'n,* 86 N.M. 113, 115, 520 P.2d 269, 271 (1974). *Griffith* also quotes helpful language from *Socorro Electric Cooperative, Inc. v. Public Service Co.,* 66 N.M. 343, 347, 348 P.2d 88, 90 (1959). Public or private character depends on "whether or not [the enterprise] is open to the use and service of all members of the public who may require it, to the extent of its capacity." *Griffith,* 86 N.M. at 115, 520 P.2d at 271. A water system is for the public use whenever service is "to sufficient of the public to clothe the operation with a public interest." *Id.* at 116, 520 P.2d at 272. I would echo the proposition that: "the true criterion by which to determine whether a ... system is a public utility is whether or not the public may enjoy it of right or by permission only." 73B C.J.S. *Public Utilities* § 3, at 132 (1983); *Junction Water Co. v. Riddle,* 108 N.J.Eq. 523, 155 A. 887, 889 (Ch.1931) (same).

In *Rural Electric Co. v. State Board of Equalization,* 57 Wyo. 451, 120 P.2d 741 (1942), the court stated that: "In order that an owner of an electric plant may be said to be a public utility, his or its property must be devoted to public use." *Id.* at 747. Such intent to devote to public use could be shown by the following factors: whether the association or corporation supplies a commodity to the public; the character of the service—whether it is a necessary commodity; whether the public enjoys the service by right or by permission; the monopoly of the service; and the corporation's exercise or right of eminent domain.[1] *Id.* at 751. The Wyoming court stated that a corporation that services such a substantial

---

**1.** In New Mexico, the taking of property

through eminent domain is permitted for none

part of the public as to make its rates, charges, and methods of operation a matter of public concern, welfare, and interest subjects itself to every characteristic of a public utility. *Id. Griffith* echoes this principle. Since an SPA association is legislatively created; the project is financed with public monies; the association is given the power, with NMEID approval, to exercise eminent domain; and the public by statute has a right to demand service, it is clear to me that SPA associations are public utilities. Under the appropriate definition, I do not believe the Commission acted arbitrarily in deciding that El Vadito fell within the scope of its authority.

other than a public use. *Kaiser Steel Corp. v. W.S. Ranch Co.,* 81 N.M. 414, 416, 467 P.2d 986, 988 (1970). In *Bookhart v. Central Electric Power Cooperative, Inc.,* 219 S.C. 414, 65 S.E.2d 781 (1951), the court stated that if a cooperative has express powers of eminent domain, it inevitably results in the obligation to reasonably render nondiscriminatory service. The court found that just because the co-op furnished service only on the basis of membership did not preclude it from being a public utility since such members constituted the "public" of such rural areas. *Id.* 65 S.E.2d at 784.